36 F.3d 1102
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rajinder Singh CHEEMA, et al., Plaintiffs-Appellants,
v.
Harold H. THOMPSON, et al., Defendants-Appellees.
 No. 94-16097.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 11, 1994.
Decided Sept. 2 1994.
 
 Before: FLETCHER, HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal comes to us from the denial of a preliminary injunction. The Appellants seek to require the appellees to allow appellants' children to attend school until the underlying litigation is decided. The children have not attended school since January of 1994. The new school term is about to commence.
 
 
 3
 Rajinder, Sukhjinder, and Jaspreet Cheema are baptized Khalsa Sikhs who wore to school ceremonial knives ("kirpans"), as required by a central tenet of their religion. The Livingston Union School District forbade them to do so pursuant to its policy prohibiting the possession of knives on school property, and has not allowed them to attend school wearing their kirpans. Relying on the Religious Freedom Restoration Act of 1993 (RFRA), the Cheemas filed suit and moved the district court for a preliminary injunction barring the district from applying its no-knives policy to ban the possession of kirpans at school. The district court denied their motion, and the Cheemas appeal. We reverse the district court's denial, and remand with instructions that the district court require the parties to make all reasonable efforts to enter into an accommodation of the Cheemas' religious practices, one that does not compromise the safety of the children in the schools the Cheemas attend and that will remain in place until the underlying action can be tried on the merits.
 
 
 4
 * We review the district court's denial of a motion for a preliminary injunction for abuse of discretion. Stanley v. Univ. of South. Calif., 13 F.3d 1313, 1319 (9th Cir.1994). We will reverse only if the district court based its decision on an erroneous legal standard or on clearly erroneous findings of fact. Senate of California v. Mosbacher, 968 F.2d 974, 975 (9th Cir.1992). Questions of law underlying the preliminary injunction are, of course, reviewed de novo. Id. at 976.
 
 
 5
 We conclude that the district court misapprehended the law with respect to the underlying issues in this litigation and thus abused its discretion in denying appellant's motion for a preliminary injunction. See Stanley, 13 F.3d at 1319. We note that we make this interim ruling, as did the district court, in the face of considerable time restraints and on a record that is far from complete. We stress that our ruling does not reach the merits of this case and that our disposition of this appeal will affect the rights of the parties only until the district court renders judgment on the merits. See Gilder v. PGA Tour Inc., 936 F.2d 417, 422 (9th Cir.1991) (noting that dispositions of appeals from rulings on preliminary injunctions generally provide little guidance as to the appropriate disposition on the merits).
 
 II
 
 6
 In ruling on a preliminary injunction, we weigh the likelihood of harm against the likelihood of success on the merits. Gilder, 936 F.2d at 421. "The greater the relative hardship to the moving party, the less probability of success must be shown." Regents of Univ. of Cal. v. ABC, Inc., 747 F.2d 511, 515 (9th Cir.1984). We conclude that the Cheema children will suffer not just hardship, but possibly irreparable injury if they are not allowed to attend school during the pendency of this case. See Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal., 840 F.2d 701, 709 (9th Cir.1988) (teacher's loss of classroom time due to enforced job transfer is irreparable injury). Home schooling is no substitute for in-class education for children like the Cheemas, whose primary language is not English and who thus require daily contact with native speakers in order to build their own language skills.
 
 
 7
 On this record, we see no offer of meaningful or, indeed, any accommodation by the district--not even temporary accommodation that it would be willing to allow until this case can be decided. RFRA requires the school district to demonstrate that the burden it imposes on the Cheemas' religious practices "is the least restrictive means of furthering [its] compelling governmental interest" in the safety of the school. 42 U.S.C. Sec. 2000bb-1(b)(2). There is no such demonstration in the record as it now stands. On the contrary, the record is replete with evidence of less restrictive means imposed by other school districts, and the Cheemas themselves have offered to provide their children with shorter kirpans which are sewn into their sheaths.
 
 III
 
 8
 The Free Exercise Clause of the First Amendment commands Congress to "make no law ... prohibiting the free exercise [of religion]." U.S. Const. amend. I.[1] Until 1990, all laws burdening the free exercise of religion--whether facially neutral or not--were subjected by the U.S. Supreme Court to the strictest level of scrutiny, under which they had to be narrowly tailored to serve a compelling governmental interest. See, e.g., Wisconsin v. Yoder, 406 U.S. 205 (1972); Sherbert v. Verner, 374 U.S. 398 (1963). In 1990 the Court held that facially neutral and generally applicable laws would no longer be subjected to this level of scrutiny. Employment Division, Oregon Department of Human Resources v. Smith, 494 U.S. 872 (1990). Congress responded with the Religious Freedom Restoration Act of 1993, 42 U.S.C. Sec. 2000bb, et seq. ("RFRA").
 
 
 9
 RFRA's express purpose is to restore, in legal challenges to laws of general applicability which burden religion, "the compelling interest test as set forth in [Sherbert and Yoder ]." 42 U.S.C. Sec. 2000bb(b)(1). RFRA provides:
 
 
 10
 (a) In General
 
 
 11
 Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
 
 
 12
 (b) Exception
 
 
 13
 Government may substantially burden a persons exercise of religion only if it demonstrates that application of the burden to the person--
 
 
 14
 (1) is in furtherance of a compelling governmental interest; and
 
 
 15
 (2) is the least restrictive means of furthering that compelling governmental interest.
 
 
 16
 42 U.S.C. Sec. 2000bb-1. RFRA's intent to overrule Smith and reinstate prior federal case law is evident in its finding that "the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. Sec. 2000bb(a)(5). RFRA places the burden of demonstrating a compelling interest and narrow statutory tailoring squarely on the government. 42 U.S.C. Sec. 2000bb-2(3).
 
 IV
 
 17
 The district has a compelling interest in protecting the safety of its students. "Providing public schools ranks at the very apex of the function of a State," Yoder, 406 U.S. at 213, and the district has an obligation under the California Constitution to ensure its schools are "safe, secure and peaceful." Cal. Const. Art. I, sec. 28 (c). The protection of public safety and order has been recognized by the U.S. Supreme Court as a compelling governmental interest. Yoder, 406 U.S. at 230; Sherbert, 374 U.S. at 403.
 
 
 18
 The district has no such compelling interest, however, in controlling what the district court characterized as "the impact on other children resulting from the presence of kirpans at school" if the impact is not directly related to safety. ER 354.[2] RFRA's purpose is to require accommodation of a variety of religious practices where feasible. The district's concern that it treat all children the same is not a compelling interest because accommodation sometimes requires exactly the opposite: accepting those who are different and recognizing that "fairness" does not always mean everybody must be treated identically. Moreover, the district has a compelling interest not in protecting students from all fears, but rather only those which are reasonably related to a real threat, see Western Presbyterian Church v. Bd. of Zoning Adjustment, 849 F.Supp. 77, 79 (D.D.C.1994) (under RFRA, zoning board may not restrict church's soup kitchen because of "unfounded, or irrational fears of certain residents"), or which would significantly interfere with the school's mission to teach students in an appropriate fear-free environment. In any case, the district has provided no evidence that any of its students are afraid of or upset by kirpans.
 
 V
 
 19
 In seeking to enforce its compelling interest in students' safety, the district has a duty under RFRA to avoid all unnecessary burdens on their religious liberty. The district's regulations must therefore be narrowly tailored to employ only "the least restrictive means of furthering [its] compelling governmental interest." 42 U.S.C. Sec. 2000bb-1(b)(2). The school district's stance before both the district court and this court has been that it does not have an affirmative burden to show that its ruling is the least restrictive means of furthering its compelling governmental interest. It has put in the record no evidence whatsoever of any attempt to accommodate the Cheemas' religious practices.[3] Counsel for the district clearly stated at oral argument that the district did not feel obliged to do so.
 
 
 20
 Perhaps because of this erroneous belief, the district has done nothing to compile a factual record in support of its case. On the contrary, the record shows that numerous other school districts allow children to wear kirpans.[4] And even more important, despite these numerous examples of accommodation, the record is devoid of evidence of any incident where kirpans have been involved in school-related violence.
 
 
 21
 The school district clearly has a compelling interest in the safety of its schools. Its broad no-knife policy furthers that interest, but burdens the Cheemas' religious practices when applied to them without accommodation.[5] We find that the district has not sustained its burden of showing that it has used the least restrictive means to further its interest. In contrast, we note, without expressing any opinion as to its sufficiency, that the Cheemas have already proposed to wear shorter kirpans which are sewn tightly into their sheaths. During the period that necessarily will ensue before trial, every effort should be made to reach an accommodation that will permit the Cheema children to attend school with their kirpans, without endangering their classmates or themselves. The injunction or agreement between the parties need deal only with this interim period and only with these three Cheema children. A full record can be made at trial to undergird a reasoned decision. In light of the record that is developed, accommodation undertaken now may or may not prove to be the least restrictive means, or indeed may prove not restrictive enough.[6]
 
 
 22
 Time is of the essence. The mandate shall issue forthwith. The district court shall direct the parties jointly to submit to it an agreed plan of accommodation, which will protect the safety of the students and accommodate the religious requirements of the Cheema children.[7] If the parties are unable to agree, the district court shall forthwith impose one after such further proceedings as it deems necessary in time to allow the Cheema children, if they agree to the accommodation, to commence school at its opening or soon after. Any further appeal shall be to this panel and may be on an emergency basis.
 
 
 23
 REVERSED and REMANDED.
 
 
 24
 THE MANDATE SHALL ISSUE FORTHWITH.
 
 WIGGINS, Circuit Judge, dissenting:
 
 25
 I am troubled by the majority's reasoning and dissent from its conclusion.
 
 
 26
 I agree with the majority that the Cheema children will suffer hardship if they are not allowed to attend school during the pendency of this case. I do not agree, however, that there exists any significant likelihood of success on the merits. Accordingly, I believe the balance weighs in favor of denying the preliminary injunction.
 
 
 27
 There exists very little case law on the issue of a Sikh's right to carry a kirpan in public arenas. I suggest, however, that Sikhs are in a number of instances denied the right to exercise this religious practice in the interest of public security. For example, I imagine that a Sikh is not allowed to carry a kirpan when boarding an airplane or entering a federal courtroom. In each instance, the federal government's compelling interest in public safety outweighs the Sikh's First Amendment right to exercise his religion. Similarly, I believe that the school district's compelling interest in school children's safety outweighs the Cheema children's right to wear their kirpans in school.
 
 
 28
 Furthermore, I challenge the majority's subtle suggestion that the school district lacks a compelling interest. See Mem.Dispo. at 5. The majority implies that while the school district would have a compelling interest in protecting the students from those fears which are reasonably related to a real threat, no such real threat even exists here. I remind the majority that the issue before us involves a seven- or eight-inch knife with a four-inch blade. Cheema v. Thompson, No. 94-5360, at 3 (E.D.Cal. May 27, 1994). The district court judge specifically noted that, having examined the Cheema children's kirpans, he did not consider them to appear harmless. Id. at 20 n. 23. Furthermore, the district court judge specifically found that the weapon-like qualities of the kirpans make them "a danger to children in school." Id. at 20. Such factual findings are not clearly erroneous. United States v. Notrangelo, 909 F.2d 363, 364 (9th Cir.1990) (noting that we review a district court's factual findings for clear error).
 
 
 29
 In addition, I emphasize the potential dangers of permitting knives in school. First, we must be concerned with the abnormal, non-law-abiding Sikh child. If such a child were to carry a kirpan, he would pose a substantially greater threat to the safety of the other children than he otherwise would because now he would be armed. Second, we must consider that a non-Sikh child may somehow seize a Sikh child's kirpan and threaten or harm other children. Such a child would not otherwise have access to a knife while in school. Finally, and most importantly, we must be concerned with the fact that the Sikhs at issue are children and thus have the maturity and judgment of children. Given that Sikhs are to use their kirpans in life-or-death situations, we would be forced to rely on school children to make the determination as to when their lives are at stake. Clearly, school officials need not knowingly expose the non-Sikh school children to such an unacceptable position of vulnerability.
 
 
 30
 While I am inclined to affirm the district court's denial of the preliminary injunction because of the low likelihood of success on the merits, I must conclude that we are in a position neither to affirm nor to reverse the district court. Although the district court prepared an otherwise thoughtful and well-written order, it failed to complete the analysis necessary to evaluate the likelihood of success on the merits. Specifically, the district court failed to consider whether the school district demonstrated that the burden it imposes on the Sikhs' exercise of religion is the least restrictive means of furthering its compelling interests. 42 U.S.C. Sec. 2000bb-1(b). Therefore, I would remand to the district court with instructions simply to find whether there exists less restrictive means of furthering the school district's compelling interests.
 
 
 31
 I would not require the district court to make all reasonable efforts to enter into an accommodation of the Cheemas' religious practices so that the Cheemas may attend school. At this point, it is not clear that any feasible means exist to accommodate the Cheemas' need to carry kirpans. The majority's instructions to the district court impose greater restrictions on the state's ability to burden a person's exercise of religion than those set forth in the Religious Freedom Restoration Act of 1993, 42 U.S.C. Sec. 2000bb-1(b).
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The First Amendment is applicable to the states via the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296 (1940)
 
 
 [2]
 The court found that other children might be frightened by the kirpans, or might think it unfair that some children may have knives while others may not. ER 355. This appears to be speculation only
 
 
 [3]
 The district's only suggestion has been that the Cheemas wear kirpan medallions, a suggestion that apparently does not meet the Sikh religion's requirements
 
 
 [4]
 Yuba and Live Oak school districts allow kirpans but only if they are riveted to their sheaths. Selma permits them only with a rounded tip and blunted edge. Most Canadian schools appear to permit them. The Cheemas themselves have proposed to wear shorter kirpans sewn into their sheaths in such a fashion that even an adult school board member could not remove them. The district has failed to show why these less restrictive alternatives are insufficient
 
 
 [5]
 Cal.Pen.Code Sec. 626.10(a) makes it a crime in California to carry a knife with a blade longer than 2.5 inches on school property. The kirpan blades presently at issue are longer than 2.5 inches. At oral argument, counsel for the district continued to express a firm commitment to an unequivocal ban on all weapons (including pocket knives and even toy knives) and stated that no accommodation whatsoever was necessary
 We note that a bill currently pending before the California legislature would amend Sec. 626.20 to exempt the carrying of a knife as part of any recognized religious practice. Calif.S.B. 89, 1993-94 Reg.Sess. Sec. 626.10(g) (1993). The bill, however, would allow a school district to impose reasonable conditions upon the carrying of knife for religious purposes. Id.
 
 
 [6]
 We stress again that RFRA clearly puts the burden on the school district to put evidence in the record in support of its contention that its policy furthers a compelling interest and that its policy is the least restrictive means of furthering that compelling policy. Without such evidence, a reviewing court will be hard pressed to accept the district's contentions
 
 
 [7]
 For example, kirpans might be blunted and dulled, as well as sewn or locked into their sheaths