**Gurdev Kaur CHEEMA, Individually and as Guardian ad Litem for Rajinder Singh Cheema, Sukhjinder Kaur Cheema, and Jaspreet Singh Cheema; Gurdeep Singh Bhatia; Gurmeet Singh Thiara, Plaintiffs–Appellees,**

v.

**Harold THOMPSON, individually and in his official capacity as Superintendent of the Livingston Union School District; Henry M. Escobar; Benjamin Alvarnaz; Vernon Boyd; Fred Kishi; Janet Martin; David Theodore; Paul De Ayora; Filomena Sousa; and William Eldrige, Defendants–Appellants.**

No. 94–16868.

United States Court of Appeals,
Ninth Circuit.

Submitted April 18, 1995 *.

Order Aug. 1, 1995.

Order Withdrawn Oct. 12, 1995.

Decided Oct. 12, 1995.

* The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed. R.App.P. 34(a) and 9th Cir.R. 34.4.

Lois A. Lindstrom, Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Oakland, California, for defendants-appellants.

Stephen V. Bomse, Heller, Ehrman, White & McAuliffe, San Francisco, California, for plaintiffs-appellees.

Before: FLETCHER, HALL, and WIGGINS, Circuit Judges.

Opinion by Judge HALL; Dissent by Judge WIGGINS.

### ORDER

The order filed August 1, 1995, is hereby withdrawn and the opinion below filed in its stead.

### OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge:

■ Appellants Livingston Union School District (the "school district") appeal the district court's preliminary injunction ordering them to accommodate three schoolchildren's religious practices until this dispute under the Religious Freedoms Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb et seq., can be litigated on the merits.

■ The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction of the appeal pursuant to 28 U.S.C. § 1292(a)(1). We review the district court's preliminary injunction for abuse of discretion. *Stanley v. Univ. of Southern Calif.*, 13 F.3d 1313, 1319 (9th Cir.1994). Finding none, we affirm.

### I

Three young Khalsa Sikh children stand at the center of this controversy: Rajinder, Sukhjinder, and Jaspreet Cheema (together, the "children" or "Cheemas"). A central tenet of their religion requires them to wear at all times five symbols of their faith: "kes" (long hair), "kangha" (comb), "kachch" (sacred underwear), "kara" (steel bracelet), and a "kirpan" (ceremonial knife).[1] This case began when the school district in which the Cheemas reside refused to allow the children to wear kirpans to school.

The school district relied on its total ban of all weapons, including knives, from school grounds. It also pointed to two state statutes, both of which it thought compelled its policy. *See* Cal.Pen.Code § 626.10(a) (making it a crime to carry a knife with a blade longer than 2½ inches on school property); Cal.Educ.Code § 48915(a) (authorizing expulsion for the possession of "any knife . . . of no reasonable use to the pupil" on school grounds). As far as the school district was concerned, there was nothing left to discuss; a kirpan was unquestionably a knife, and as such it fell squarely within the absolute ban.

This left the Cheema children with two choices if they wished to attend school: either leave their kirpans at home (and violate a fundamental tenet of their religion) or bring them to school (and face expulsion and/or criminal prosecution). The children did neither, electing instead to stay home

---

1. A kirpan has a curved, steel blade and is worn in a sheath held to the body by a leather strap. The kirpans at issue here are roughly the size of an open Swiss Army knife, about 6–7 inches long with a blade of roughly 3½ inches.

while their parents brought this federal action under the Religious Freedoms Restoration Act.

## II

The Cheemas claimed in their lawsuit that the district's policy, as applied to them, violated their statutory right to the free exercise of religion as guaranteed by 42 U.S.C. §§ 2000bb *et seq.* The children immediately asked for a preliminary injunction enjoining enforcement of the ban. The district court denied the motion, and the children appealed.

The narrow issue on appeal was whether the district court had abused its discretion in denying the request for a preliminary injunction. *See Stanley,* 13 F.3d at 1319 (articulating standard of review). We held that it did. *See Cheema v. Thompson,* No. 94–16097, 1994 WL 477725 (Sept. 2, 1994) (memorandum disposition).

■ In ruling on the preliminary injunction, the district court had to determine whether the children had demonstrated sufficient hardship together with a fair chance of success on the merits. *Stanley,* 13 F.3d at 1319. We were satisfied that the children had demonstrated the requisite hardship; indeed, their ongoing exclusion from the classroom amounted to irreparable injury. *See Chalk v. U.S. Dist. Ct. Cent. Dist. of Calif.,* 840 F.2d 701, 709 (9th Cir.1988).

■ We also were convinced that the children had shown more than a fair chance of success on the merits. To prevail under RFRA, the children had to prove that their insistence on wearing kirpans was animated by a sincere religious belief and that the school district's refusal to accommodate that belief put a substantial burden on their exercise of religion. *See* 42 U.S.C. § 2000bb–1(a). The children unquestionably carried their burden. Even the school district con-

ceded the point, at least insofar as the ruling on the preliminary injunction was concerned. That shifted the burden to the school district to save its policy by proving that the kirpan ban was necessary to serve a compelling governmental interest. *Id.* at § 2000bb–1(b).

We concluded, as did the district court, that the school district had a compelling interest in campus safety. *See, e.g., Wisconsin v. Yoder,* 406 U.S. 205, 213, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972). We even agreed that the kirpan ban served that interest, despite the almost total lack of evidentiary support in the record.[2] But we simply could not conclude that nothing short of a wholesale ban would adequately protect student safety. The problem was a *total* failure of proof; the school district refused to produce any evidence whatever to demonstrate the lack of a less restrictive alternative.[3] Its stance, both before the district court and the panel, was that it had no obligation to do so. It was quite mistaken. *See* 42 U.S.C. § 2000bb–2(3) (putting burdens of production and persuasion on the government).

The district court overlooked this problem. When it denied the children's motion for a preliminary injunction, it simply declared that the absolute ban was necessary to protect the school district's compelling interest in, among other things, student safety. The district court's failure to consider RFRA's "no less restrictive alternative" requirement left us no choice but to reverse. *Senate of California v. Mosbacher,* 968 F.2d 974, 975 (9th Cir.1992) (misapplication of law constitutes abuse of discretion).

■ In sending the case back to the district court, we took care to spell out the school district's obligations under RFRA. We also urged the school district on remand to compile a record that would support its policy. In the meantime, however, the chil-

---

**2.** Even the district court repeatedly criticized the school district for having failed to build a meaningful record.

**3.** This time the school district could not rely on our common sense to save it. Indeed, common sense cut against the school district. The simple fact—*documented in the record*—was that other school districts with a Khalsa Sikh population had managed to accommodate kirpans without

sacrificing student safety. For example, the record included the policies of two California school districts, which allowed kirpans so long as the blades were dulled, no more than 2½ inches, and securely riveted to their sheaths. The natural question was why the same compromise would not work here. The school district gave us no answer.

dren had proven their case for a preliminary injunction. Not only had they shown hardship, they had demonstrated a very strong chance of success on the merits, thanks in large part to the failure of the school district to build a meaningful record. *See Stanley,* 13 F.3d at 1319 (hardship plus a fair chance of success on the merits requires preliminary injunction).

## III

On remand the district court invited the parties to negotiate the terms of the preliminary injunction. The parties, however, failed to agree on a compromise solution, so the district court, as we specifically instructed, imposed its own plan. It ordered the school district to lift its wholesale kirpan ban and allow the children (and their kirpans) back to school under the following conditions:

1) the kirpan will be of the type demonstrated to the Board and to the District Court, that is: a dull blade, approximately 3–3½ inches in length with a total length of approximately 6½–7 inches including its sheath;

2) the kirpan will be sewn tightly to its sheath;

3) the kirpan will be worn on a cloth strap under the children's clothing so that it is not readily visible;

4) a designated official of the District may make reasonable inspections to confirm that the conditions specified above are being adhered to;

5) if any of the conditions specified above are violated, the student's privilege of wearing his or her kirpan may be suspended; and

6) the District will take all reasonable steps to prevent any harassment, intimidation or provocation of the Cheema children by any employee or student in the District and will take appropriate disciplinary action to prevent and redress such action, should it occur.

The school district now appeals. Again, our review is for abuse of discretion. *Stan-*

*ley,* 13 F.3d at 1319. This time we find none. The school district does not cite a single legal or factual error that would permit a finding of abuse of discretion; instead, it asks us to vacate the injunction simply because they find its terms objectionable.[4] However, we cannot simply substitute our judgment for that of the district court. *United States v. Egbuniwe,* 969 F.2d 757, 761 (9th Cir.1992). The district court faithfully applied RFRA to the facts of this case and came up with an injunction that it judged appropriate. We do not endorse the terms of the injunction, but neither do we think the district court abused its discretion. If the school district dislikes the injunction, it should use its opportunity to litigate this dispute on the merits to present the district court with adequate evidence from which a fully informed decision can be made.

AFFIRMED.

WIGGINS, Circuit Judge, dissenting.

### INTRODUCTION

The majority affirms the district court's pre-trial "plan of accommodation," under which a school district is enjoined from enforcing both its own no-knives policy and a state statutory limitation on the size of knives on campuses against Sikh children who carry their knives ("kirpans") for religious reasons. Further, the plan of accommodation bars the school district from requiring that the kirpans in question be riveted to their sheaths. As a result of the majority's ruling, the school district must allow 7, 8 and 10 year-old children to carry 7–inch knives to school, as long as the knives are worn under the children's clothing and are sewn to their sheaths, even though: the district court originally concluded that the knives in question are dangerous; the children's own expert testified that sewing the knives to the sheaths does not render them unremovable; no evidence was presented showing that the 7, 8 and 10 year-olds in question are any more mature than other children of the same age; evidence was pre-

---

4. We note that defendants' own conduct left the district court with no thoughtful and careful advice as to how to accommodate student safety and yet respect the Sikhs' religious practices and beliefs.

sented that the children in question, despite their religious dictates, have exposed their knives during play; evidence was presented that one of the children has stated his willingness to use his knife when wronged; the children's expert testified that the children's faith allows, or even mandates, that they use their knives in propagation of "God's justice"; and the same expert testified, and the district court found, that the children's faith allows them to use their knives for defensive purposes. I dissent.

## BACKGROUND

In May 1994, the district court denied a request for a preliminary injunction made by several minor and adult Khalsa Sikhs residing in Livingston, California. The plaintiffs there (Appellees in this proceeding) claimed that the school district's ("District") policy of banning all knives on its campuses burdened their free exercise of religion, in violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, et seq. ("RFRA"). Specifically, Jaspreet, Sukhjinder, and Rajinder Cheema, ages 7, 8 and 10 at the time of the district court's ruling, are required under the terms of their faith to wear a "kirpan," or knife (literally, a "sword"), which has deep religious significance in their faith. The District's no-knives policy obviously was at odds with this religious mandate.[1]

After receiving briefs and affidavits, and conducting a hearing at which the Cheemas' counsel displayed a kirpan, the district court denied the Cheemas' request to preliminarily enjoin the District from enforcing its policy. The district court found that the balance of hardships favored the school district. The court found that the case involved "the combination of two well established compelling governmental interests." That is, the school district has a compelling interest in assuring the safety of its students, and in "preserving a school environment which best facilitates children's learning." The district court believed that both of these interests would be "significantly" impeded if the Cheemas were allowed to bring their kirpans to school.

On appeal, this panel reversed the district court's ruling. *Cheema v. Thompson*, No. 94–16097, 1994 WL 477725 (9th Cir. Sep. 2, 1994) (unpublished disposition) ("September 2 Opinion"). The majority concluded that the district court "misapprehended the law," and thus abused its discretion by denying the Cheemas' motion for a preliminary injunction. *Id.* at 1. I dissented.

As to the District's interest in the safety of its students, the majority stated that the District had produced no evidence of any attempt to accommodate the Cheemas' religious practices. It noted that other school districts allow kirpans (with various limitations), and that there was no evidence of school-related kirpan violence. Accordingly, the majority held that the District had not carried its burden of showing that its no-knives policy was the least restrictive means of furthering its safety interest.

As to the district court's belief that "[t]he interest in preserving a school environment which best facilitates children's learning includes preserving and fostering a learning atmosphere that is undisturbed by intimidation, fear of violence or other threats which may create a concern for the children's safety," the majority noted that "the district has a compelling interest not in protecting students from *all* fears, but rather only those which are reasonably related to a real threat, or which would significantly interfere with the school's mission to teach students in an appropriate fear-free environment." The majority then stated that "the district has provided no evidence that any of its students are afraid of or upset by kirpans."

The majority instructed the district court to try to make the parties reach a compromise agreement, pending a trial on the merits, which "will protect the safety of the students and accommodate the religious requirements of the Cheema children." The

---

1. The District's no-knives policy is in accord with the California Constitution, which states that public school students have an "inalienable right to attend campuses which are safe, secure and peaceful." Cal. Const. art. I, § 28(c). The policy is also in accord with, although stricter than, a California statute meant to protect this "inalienable right." Cal.Penal Code § 626.10(a) makes it illegal to carry various weapons and knives, including knives with blades longer than 2½ inches, upon public school campuses.

district court was also directed to impose such a "plan of accommodation" if the parties could not agree to one.

The parties were unable to reach a compromise agreement. There were two main points of disagreement. First, the District offered to allow the children to wear kirpans if they were no longer than 2½ inches in total length. The Cheemas stated that their demand for 7–inch kirpans was non-negotiable. Second, the District offered to allow kirpans that were riveted to their sheaths. The Cheemas stated that this, too, was non-negotiable. Sewing the kirpans to their sheaths was the most restrictive means of fastening the knives that the Cheemas could accept.

After finding the parties unable to agree to a plan of accommodation, the district court imposed one, as the majority had instructed it to do. That plan includes the following provisions:

1) the kirpan will be ... a dull blade, approximately 3–3½ inches in length with a total length of approximately 6½–7 inches including its sheath;

2) the kirpan will be sewn tightly to its sheath;

3) the kirpan will be worn on a cloth strap under the children's clothing so that it is not readily visible;

4) a designated official of the District may make reasonable inspections to confirm that the conditions specified above are being adhered to;

5) if any of the conditions specified above are violated, the student's privilege of wearing his or her kirpan may be suspended; and

6) the District will take all reasonable steps to prevent any harassment, intimidation or provocation of the Cheema children by any employee or student in the District and will take appropriate disciplinary action to prevent and redress such action, should it occur.

The district court's rejection of the District's proposals (and acceptance of kirpans that are merely sewn to their sheaths), in obvious contradiction to its earlier opinion, did not rest upon any new findings of the district court. Indeed, nothing in the district court's Order indicates that it has changed its own mind regarding the dangerousness of the kirpans and the governmental interests at stake. Rather, the district court apparently believed (erroneously) that the language of the majority's September 2 Opinion required it to reject the District's shorter blade and riveted blade proposals, at least until a trial takes place at which the District can present evidence on the issue.

I dissent from the majority's affirmance of the district court's current plan of accommodation. The current plan does not allow the District to further its legitimate and compelling interests in providing safe schools and peaceful, fear-free learning environments.

## DISCUSSION

### I. Legal Framework

Appellees seek protection for their exercise of religion under the recently enacted Religious Freedom Restoration Act ("RFRA"). The RFRA states, in part:

(a) In General

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb–1.

Congress enacted the RFRA in response to the Supreme Court's decision in *Employment Division, Oregon Department of Human Resources v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Smith*, the Supreme Court addressed a free exercise challenge to a facially neutral and

generally applicable criminal statute.[2] The Court held that the compelling interest test did not apply to free exercise challenges to "generally applicable prohibitions of socially harmful conduct." *Id.* at 882–85, 110 S.Ct. at 1601–04. Instead, the Court held that the First Amendment was not offended by neutral, generally applicable laws, unless burdening religion was the object of the law. *Id.* at 878–82, 110 S.Ct. at 1599–1602.

With the RFRA, Congress attempted to overturn *Smith*. The express purpose of the RFRA is "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1).

Whether the RFRA is constitutional has not yet been decided, and that question is not before this court. At this point we are only ruling on a pre-trial motion for a preliminary injunction, that requires us to consider whether the school district's enforcement of its no-knives policy, or of California's weapons statutes, against Appellees would violate their statutory rights under the RFRA. We are not ruling on Appellees' constitutional rights, which are still circumscribed by the Supreme Court's *Smith* decision.

## II. Substantial Burden

It is clear that the District's no-knives policy, even with the District's suggested compromises, substantially burdens Appellees' free exercise of their religion. Therefore, under the RFRA, the District's policy, in its compromised form, is only enforceable against Appellees if it furthers a compelling governmental interest, and represents the least restrictive means of furthering that interest.

## III. Compelling Governmental Interests

The district court, in imposing its plan of accommodation in accordance with the Cheemas' proposed compromise, stated that "the District has failed to demonstrate that the Cheemas' proposal compromises a compelling governmental interest." I disagree.

In its original Order of May 27, 1994, the district court denied the Cheemas' request for a preliminary injunction because it found that two governmental interests (safe schools and fear-free learning environments) would be compromised if the Cheemas were allowed to carry sewn kirpans to school. The district court's new, contrary conclusion—that the District has not yet shown that any governmental interests are compromised by sewn kirpans—is not based on any new, contrary findings. Instead, the court's new conclusion is based solely on its interpretation of the majority's September 2 Opinion (which reversed the district court's earlier Order). I believe, however, that the district court read the majority's opinion overbroadly. As a result, the district court imposed a plan of accommodation that does not adequately protect two compelling governmental interests which are, in fact, at stake.

## A. The Safety of the Students

It is undisputed that the District has a compelling interest in protecting the welfare and safety of its children while they attend school. The education of children has long been recognized as a compelling state interest. *See Yoder*, 406 U.S. at 213, 92 S.Ct. at 1532; *Brown v. Board of Educ.*, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954); *Pierce v. Society of Sisters*, 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). As to society's interest in its children's safety, the Supreme Court, in *Prince v. Massachusetts*, stated:

> [this interest] is no mere corporate concern of official authority. It is the interest of youth itself, and of the whole community, that children be both safeguarded from abuses and given opportunities for growth into free and independent well-developed men and citizens.

321 U.S. 158, 165, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). Accordingly, "the state has a

---

2. The statute in question had been invoked to deny unemployment benefits to individuals who used peyote for sacramental purposes during religious ceremonies of the Native American Church.

wide range of power for limiting parental freedom and authority in things affecting the child's welfare; and ... this includes, to some extent, matters of conscience and religious conviction." *Id.* at 167, 64 S.Ct. at 442. I believe that the plan of accommodation, which allows 7, 8 and 10 year-old children to carry 7-inch knives to school, compromises school safety.[3]

The district court originally found that the kirpans in question, even if sewn to their sheaths, compromised school safety. This finding was hardly unsupported. The Cheemas' counsel displayed, and the district court examined, a kirpan. (A picture of a kirpan, with a ruler to provide scale, is a part of the record of this case.) Professor Gurinder Mann, an Assistant Professor of Sikhism and South Asian Religions at Columbia University, acting as an expert witness for the Cheemas, provided an affidavit explaining the role of the kirpan within the Sikh faith. His testimony, however, not only convinces that wearing the kirpan is an integral part of the Khalsa Sikh faith, but also that kirpans pose a threat to the safety of the District's classrooms.

Professor Mann's testimony makes clear that only real, *functional knives* suffice to fulfill the mandate of his faith. For example, when addressing the possibility of carrying smaller, largely symbolic kirpans, he stated that "it is my belief that the obligation to wear a kirpan cannot be fulfilled by a medallion or similar replica." When addressing the possibility of riveting the blades of the kirpans to their sheaths, he explained that this would not suffice because "if it was actually riveted to the sheath so that it could not be removed, that would alter it and destroy its character as a kirpan. A kirpan is a knife, not a knife and sheath combination."

Further, Professor Mann's testimony also belies the notion, argued by the Cheemas, that a kirpan, although physically a knife, is not really a knife, because it is not viewed as a knife by the Sikh people (and children) who wear it. I would reject this view out of hand, and hold that while a knife can indeed be a

kirpan, and thus have deep spiritual meaning to a Sikh, this does not change the fact that the underlying object is, still, a knife. In other words, I would allow the school district, and the district court, to look at what an object is objectively, rather than through the subjective eyes of a claimant. I do not have to reject the Cheemas' proposed subjective analysis for determining what an object in question is, however, because Professor Mann clearly, although unintentionally, revealed that *even through the eyes of a Sikh, a kirpan is indeed a weapon.* While Professor Mann stated that a kirpan "would never be regarded [as a weapon] by a Khalsa Sikh," he referred to the kirpan as "sword" and a "knife." He explained that "[a] kirpan must be made of steel and have a curved blade. It is not particularly sharp, although it is an actual knife or dagger." Most tellingly, Professor Mann explained that another requirement of Khalsa Sikhs is that they wear a steel bracelet, called a kara, at all times, "to remind that the sword [kirpan] is to be used *only in self defense and the propagation of justice.*" (Emphasis added). Thus, Professor Mann's statement that a kirpan "would never be regarded [as a weapon] by a Khalsa Sikh" appears to be a generalization, and the word "never" an overstatement, more accurately replaced by "usually not." In sum, Professor Mann's affidavit convincingly explains that only real, functional knives satisfy the kirpan requirement of his religion. It also convincingly belies the notion that what objectively appear to be knives are actually not knives to the Sikhs that wish to carry them.

Moreover, other evidence presented to the district court supported its finding of dangerousness. The district court was presented with an affidavit from a school secretary who was able to observe Jaspreet Cheema's (supposedly unnoticeable) kirpan. Worse still, she observed that Jaspreet's 4 year-old brother was wearing one, too. And, most alarmingly, the secretary stated that Jaspreet told her that "if anybody steals from me, I can put this to them." While making

---

**3.** I reiterate a point from my September 2, 1994 dissent. That is, we do not permit Sikhs to carry their knives onto our airplanes or into our court- rooms. I do not believe (nor do I ascribe to the majority the belief), that our school children's safety merits less concern than our own.

this statement he grabbed his kirpan. This occurrence is disputed.[4]

Two other incidents involving the Cheema children and their kirpans, which are undisputed, also supported the district court's original finding. A first grade child submitted an affidavit in which he stated that he saw Rajinder and Jaspreet Cheema with their kirpans out on the school grounds. He stated that Rajinder was attempting to cut the rope on the flag pole, until Rajinder's grandfather arrived and the children put their kirpans away. A teacher from another school submitted an affidavit in which she reported having seen Rajinder, Jaspreet, and Harpreet Cheema, on the same day, playing with their kirpans around the flag pole. She reported that she saw them try to hoist a kirpan up the flag pole.

After its initial hearing, the district court described its findings in its May 27 Order. The district court referred to kirpans as "knives," and found them to be "a danger to children in school." The court continued:

> Counsel's attempt at the hearing to minimize the potential harmfulness of Plaintiff's kirpans was not convincing. The kirpans, which were approximately seven inches long, present a formidable appearance even in the hands of an adult. Moreover, in respect for the secular qualities of the object, counsel exercised some restraint in his demonstration. The court, having examined the kirpans during the hearing, does not consider Plaintiffs' kirpans to appear harmless.

The court also wrote:

> Nothing in the present record suggests that the instruction or advisement given to these children prior to their initiation as Khalsa Sikhs, or that their oath of religion, would divest them of the demeanor, maturity and judgment which equate with their childhood. When Plaintiffs acknowledge the kirpan may be removed and used as a weapon when, in the judgment of a 7 year-old, 8 year-old or 10 year-old, their life is

in danger, the District's concerns are validated rather than diffused.

And, most pertinent in light of the plan of accommodation the district court has since imposed, the court originally found that even a kirpan sewn to its sheath, and worn under clothing, "remains accessible to the child wearing it, (as it must under the Khalsa faith) for use as a weapon in a life-or-death situation. Moreover, as evidenced by Rajinder's experience the kirpan will be discoverable by other students."

In direct contrast to these earlier, well-supported findings, the district court in its recent order imposing the plan of accommodation wrote: "the District has failed to demonstrate that the Cheemas' proposal compromises a compelling governmental interest." The district court made no findings contrary to its earlier findings upon which it based this new statement. (Indeed, no new evidence was presented.) Specifically, this statement is not based upon a finding that the sewing of the kirpans to their sheaths renders them safe. Rather, the district court's new position is based upon the court's reading of the majority's September 2 Opinion: "In resolving this dispute, the Court notes the Ninth Circuit's observation that the District failed to develop an evidentiary basis from which it could conclude that sewing the handle to the sheath would compromise school safety." As to the District's specific argument that the length of the kirpan should be limited to 2½ inches, or that it should be riveted to the blade, the district court did not itself reject the argument, but believed that rejection of these proposals was mandated by the majority's September 2 reversal: "[T]he Ninth Circuit found these allegations without evidentiary support.... [T]he District has not met its burden to demonstrate that sewing poses a greater threat to school safety than riveting." It is clear that the district court, in enacting its plan of accommodation, did so not because it believed that the plan represented a safe

---

4. Jaspreet, in an affidavit, denied making the statement and denied being very proficient in English. The children's mother submitted an affidavit stating her doubts that this event really happened. However, her statement that her youngest son speaks almost no English, so he could not have made the threat, is unconvincing. It was not her youngest son whom the secretary accused of making the statement.

compromise, but in spite of the fact that it did not.

I believe that the district court read the majority's September 2 Opinion too broadly. The majority, at the time of its decision, was faced with a District that refused to offer any sort of compromise or accommodation. It held that the District could not resist the Cheemas' motion for a preliminary injunction without some proof that its absolute ban on knives represented the least intrusive means of ensuring safe schools. The majority refused to allow the District to enforce its absolute ban without "a full record [which] can be made at trial to undergird a reasoned decision."

The majority did not, however, reject the proposals that the district court now rejects (riveted kirpans and 2½ inch kirpans). The majority noted that other school districts have accommodated compromised kirpans without incident: "[D]espite ... numerous examples of accommodation, the record is devoid of evidence of any incident where kirpans have been involved in school-related violence." Two of the three "examples of accommodation" to which the majority referred involved school districts that only allowed kirpans if the two restrictions the District forwarded in the present case were followed. Both Yuba City and Live Oak Unified School Districts only allow kirpans that are no longer than 3 inches in total length, and even those must be riveted to their sheaths. The third school district to which the majority referred has different restrictions (a rounded tip and a blunted edge), that accomplish the same thing: the kirpan is rendered a non-functional knife. Moreover, specifically referring to the prospect of sewn kirpans, the majority wrote: "[W]e note, *without expressing any opinion as to its sufficiency,* that the Cheemas have already proposed to wear shorter kirpans which are sewn tightly to their sheaths." (Emphasis added). Clearly, then, the district court was mistaken when it took the majority's requirement of some sort of compromise, while the parties awaited a trial at which a full evidentiary record could be developed, to be a wholesale disavowal of the district court's earlier findings on dangerousness.

### B. Peaceful Learning Environment

Like the District's interest in providing safe schools, the District's interest in providing peaceful, fear-free schools is also undisputed. In *Yoder,* the Supreme Court explained how compelling the government's in providing facilitative learning environments is:

> There is no doubt as to the power of a State, having a high responsibility for education of its citizens, to impose reasonable regulations for the control and duration of basic education. *Providing public schools ranks at the very apex of the function of a State.*

406 U.S. at 213, 92 S.Ct. at 1532 (emphasis added); *see also Brown,* 347 U.S. at 493, 74 S.Ct. at 691; *Pierce,* 268 U.S. at 534, 45 S.Ct. at 573. In accordance with this interest in providing proper schools, school officials have the authority to regulate and control the school environment in a manner consistent with the school's educational mission. *See, e.g., Hazelwood School District v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592. This interest in providing facilitative school environments was reiterated just this year by the Supreme Court, as it reaffirmed that in the interest of safe school environments, students enjoy fewer rights than adults, or even than children outside of classrooms:

> [T]he nature of [the State's power over schoolchildren] is custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults.... [F]or many purposes "school authorities act in loco parentis." ... Thus, while children assuredly do not "shed their constitutional rights at the schoolhouse gate," the nature of those rights is what is appropriate for children in school.... For their own good and that of their classmates, public school children are routinely required to submit to various physical examinations, and to be vaccinated against various diseases.

*Vernonia School District v. Acton,* —— U.S. ——, —— ———, 115 S.Ct. 2386, 2392, 132 L.Ed.2d 564 (1995) (citations omitted).

The district court originally held that the District's fear-free school interest would be

compromised if the District were enjoined from enforcing its no-knives policy against kirpans. The majority's September 2 Opinion reversed this district court holding, as well. Accordingly, the district court, in its recent Order imposing the plan of accommodation, discounted this interest as a reason for adopting the District's proposed compromises. And, as in the case of the safe-school interest, the district court made no new findings upon which it rested its reversal. Rather, it simply followed what it believed to be the majority's dictate. In the case of this interest, however, it does not appear that the district court read the dictate of the majority overbroadly. Thus, my disagreement on this issue is with the majority's September 2 Opinion.

I believe that the majority was wrong to discount the fear-free school interest, and that the district court therefore was wrong in not taking it into account in its recent Order. The majority believed that this interest was not implicated in the present case for two reasons. I disagree on both counts. First, the majority stated that only reasonable fears must be accommodated in the school environment: "[T]he district has a compelling interest not in protecting students from *all* fears, but rather only those which are reasonably related to a real threat, or which would significantly interfere with the school's mission to teach students in an appropriate fear-free environment." The majority thus implied that any fears that young children may have of kirpans in their classrooms would be unreasonable. The district court, in its subsequent Order, understandably read the majority's statement as a caution "that unfounded or irrational fears do not constitute a compelling interest."

I believe that the "reasonably related" language from the majority's opinion, understandably read as "rational" by the district court, is inappropriate in the present case. As explained in the foregoing discussion, the kirpans in question are indeed functional knives. The Cheemas' religion allows them to use them in self defense or in the "propagation of God's justice." And the Cheema children have, as one might expect of 7, 8 and 10 year-olds, shown a willingness to play with

their knives, openly displaying them in the process. I certainly could not, under these circumstances, label a 7 year-old's apprehension at having his peers carrying the 7-inch long kirpans "unreasonable" or "irrational."

The majority's second reason for concluding that the interest in a fear-free school environment was not implicated in this case was that no evidence had been produced of fearful students. The majority is on firmer ground with this rationale, but I nevertheless disagree with its requirement of proof. I agree that under the RFRA, the District bears the burden of proof, but I believe that in this case we should be able to presume that the presence of knives in our school rooms, when carried by children whose faith allows them to use the knives, and who have demonstrated a willingness to play with them openly, would cause apprehension in some "rational" students. Nevertheless, the District will have, in the upcoming trial, an opportunity to demonstrate that this compelling interest is also implicated in this case.

## IV. Least Restrictive Means

As discussed above, the district court's plan of accommodation does not represent the least restrictive means of furthering the District's interests in safe and fear-free schools. As long as students are allowed to carry functional (full-sized and wieldable) knives, these interests are compromised. The least restrictive means of furthering these admittedly compelling interests is to require that any knives in school be short and non-removable.

In contrast, the plan of accommodation in the present case does not restrict kirpans to those that are non-functional. Rather, it allows Sikh students to carry functional knives. This shortcoming is easily recognizable. First, the plan allows for kirpans up to 7 inches in total length, and 3½ inches in blade length. Second, the sewing of the handles to the sheaths does *not* render the knives unremovable (and thus unwieldable). It just makes them *harder* to remove. (When asked why this restriction was acceptable, Professor Mann stated that it was because "sewing down the handle of the kirpan does not destroy its character since the kirpan itself is

not altered and since it can be removed (albeit with much greater difficulty)"). Indeed, the very reason the Cheemas can live with this arrangement is that it leaves them with real, functional knives, as opposed to riveting, which actually renders the knives unremovable: "[I]f it was actually riveted to the sheath so that it could not be removed, that would alter it and destroy its character as a kirpan. A kirpan is a knife, not a knife and sheath combination."

The school district's proposals, in contrast, would render the kirpans non-functional as knives, but still allow for some sort of kirpan to be worn. The school district's first proposal is to restrict the Cheema children's kirpans to a total length of 2½ inches, or at least the 3-inch restriction used in the Yuba City and Live Oak Unified School Districts. Alternatively, the District asks that if longer kirpans are allowed, that they be riveted to their sheaths. This requirement is also imposed in the aforementioned school districts. I believe these proposals represent the least intrusive means of rendering the kirpans non-functional knives, and thus ensuring safe, fear-free schools.

Lastly, I note that this case presents a somewhat unique question of "least restrictive means." That is, the Cheemas have taken an all-or-nothing position. They have stated that their kirpans must be long enough to be actual knives, and must be removable so as to be functional knives. Short, or unwieldable, kirpans will not suffice, according to them. Their expert testified to the same effect. Accordingly, I believe that enforcing the District's no-knives policy, and banning the Cheemas' kirpans altogether, would be no more burdensome upon their religious beliefs than allowing shorter, riveted kirpans. Nevertheless, I engage in the conversation of rivets and length because apparently other Sikhs (like those in Yuba City and Live Oak Unified School Districts) do believe that they can follow the dictates of their faith by carrying non-functional kirpans, and the District may well want to know what restrictions are acceptable should other Sikhs wish to wear kirpans to school.

## CONCLUSION

It is axiomatic that we owe our children a safe, and effective, learning environment. The current plan of accommodation, however, does not allow the school district to provide either. I trust that a better decision will be reached at the conclusion of the pending trial. We simply cannot allow young children to carry long, wieldable knives to school. Period.