Kenneth O. ASHELMAN,
Plaintiff–Appellant,

v.

Donald B. WAWRZASZEK, Ellis C. MacDougall, A. Guajalva, and Robert Goldsmith, Defendants–Appellees.

Kenneth O. ASHELMAN,
Plaintiff–Appellee,

v.

Donald B. WAWRZASZEK, Ellis C. MacDougall, A. Guajalva, and Robert Goldsmith, Defendants–Appellants.

Nos. 95–15071, 95–15168.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 12, 1997.

Decided April 15, 1997.

As Amended April 25, 1997.

Bruce E. Samuels, Lewis and Roca, Phoenix, AZ, for plaintiff–appellant–cross–appellee.

Bert E. Moll, Deputy Attorney General, Phoenix, AZ, for defendants–appellees–cross–appellants.

Before: CANBY and RYMER, Circuit Judges; EZRA, District Judge.*

RYMER, Circuit Judge:

Kenneth O. Ashelman, an Orthodox Jew and an inmate at the Arizona State Prison Complex, appeals the district court's judgment following a bench trial on his claim under 42 U.S.C. § 1983 that his right to the free exercise of religion was violated by the prison's failure to provide a kosher diet.[1] The warden cross-appeals the district court's finding that prison officials prevented Ashelman from resting and fasting as required by his faith, and its entry of an injunction barring this practice.

We have jurisdiction, 28 U.S.C. § 1291, and we reverse on both grounds.

I

There is no question that Ashelman sincerely believes in the mandates of Judaism, or that one of the central tenets of Orthodox Judaism is a kosher diet.[2]

At the time of his incarceration, it was the policy of the Department of Corrections (DOC) to afford inmates the opportunity to adhere to the dietary requirements of their faith systems, including to accommodate special diets unless this would create serious hardship upon the institution. However, Ashelman was not provided any kosher meals until the complaint in this action was filed June 8, 1983. Thereafter, DOC served one frozen TV-style kosher meal per day; for the other two meals, Jewish inmates could choose from vegetarian or nonpork alternatives, neither of which is kosher.

Ashelman's complaint alleged numerous violations of his civil rights, on most of which the district court granted summary judgment October 4, 1984. The remaining claims, which included Ashelman's request for a kosher diet, were tried to a magistrate judge by consent, beginning July 31, 1989. The court issued its Findings and Conclusions December 12, 1994.[3]

---

* Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation.

1. This issue has been briefed on appeal by counsel appointed by this court as part of the Pro Bono Representation Project. Ashelman, pro se, also appeals several pretrial rulings by the district court. We have resolved Ashelman's pro se claims in a separate unpublished disposition filed concurrently with this opinion.

2. Testimony at trial indicated that Orthodox Jews are required to maintain a kosher diet, according to the laws of kashruth. Jews following kashruth may only eat animals with split hooves and that chew their cud and certain fowl and fish with scales and fins. Dairy products and meat are not allowed to be consumed in the same meal. It is customary to wait at least six hours after consuming meat to eat dairy and at least one hour after drinking milk to eat meat. Fruits, vegetables, and some cereals qualify as kosher. Kosher food must remain physically separate from nonkosher food, as must utensils and plates. Disposable utensils satisfy kosher requirements.

3. No reason appears why this litigation took so long. To "secure the just, speedy, and inexpensive determination of every action" is the first principle of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 1. It should not be forgotten, as it apparently was here.

The court found that of the general population of some 12,000 inmates, approximately 70 are Jewish. It also found that the religious diet requirement for most inmates is met by the vegetarian or pork-free diet; that a kosher diet cannot be prepared in a standard prison kitchen; that building separate kosher kitchens, or a central kosher kitchen to serve all units of the prison, would be prohibitively expensive and pose a security risk because of the need to load and transport food trays; that a frozen TV-style kosher meal costs about $5.00 in comparison with $.84 for a regular meal; and that providing three frozen kosher meals per day would be prohibitively expensive and might create a dangerous appearance of favoritism, inviting envy, jealousy, and potential friction which might affect the safety of prison staff and inmates. On the basis of these findings, the court concluded that there was a valid and rational connection between the limitations placed on the number of kosher meals provided to inmates and the prison's concerns with respect to perceived favoritism and allocation of prison resources. It further concluded that supplying one kosher meal per day and two vegetarian or pork-free meals per day was a reasonable alternative in light of the prison's legitimate penological concerns about cost and favoritism. For these reasons, the court held that Ashelman's First Amendment rights were not violated.

The court also found that the prison had not allowed Ashelman to fast and refrain from labor on days of religious significance. Thus, it ordered the prison to allow Ashelman to refrain from labor and to fast on those days.

Ashelman timely appealed the judgment against him, and the warden cross-appealed the injunctive relief.

## II

Whether the prison violated Ashelman's First Amendment right of free exercise of religion is a mixed question of law and fact reviewed de novo. *Stefanow v. McFadden,* 103 F.3d 1466, 1470 (9th Cir.1996). We review for an abuse of discretion the district court's injunction requiring the prison to permit Ashelman to rest and fast as required by Orthodox Judaism. *Cheema v. Thompson,* 67 F.3d 883, 884 (9th Cir.1995).

## III

### A

Ashelman contends that his claim must be analyzed under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb *et seq.,* which was enacted between trial and judgment. RFRA requires the government to meet a "compelling state interest/least restrictive means" test before substantially burdening a person's exercise of religion. 42 U.S.C. § 2000bb–1. RFRA applies in the prison context although substantial deference is still owed to the judgment of prison administrators. *May v. Baldwin,* 109 F.3d 557, 563 (9th Cir.1997); *Bryant v. Gomez,* 46 F.3d 948, 949 (9th Cir.1995). At the time this matter was tried, the "reasonableness" standard of *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), and *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), controlled.[4] The magistrate judge's findings and conclusions were based on the pre-RFRA standard, but he recognized that the Act might supersede *O'Lone* and *Turner,* and stated that he found that Ashelman was not entitled to relief under either test.

4. The *O'Lone/Turner* test balances the inmate's free exercise right and the prison's legitimate correctional goals and security concerns. Whether a restriction is "reasonably related to legitimate penological interests" is determined by considering four factors:

First, there must be " 'a valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Second, whether there are "alternative means of exercising the right that remain open to prison inmates" must be assessed. Third, "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally" must be determined. Fourth, "the absence of ready alternatives" to the regulation must be explored. The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable."

*Ward v. Walsh,* 1 F.3d 873, 876 (9th Cir.1993) (quoting *Turner,* 482 U.S. at 89, 107 S.Ct. at 2262) (citations omitted), *cert. denied,* 510 U.S. 1192, 114 S.Ct. 1297, 127 L.Ed.2d 649 (1994).

The warden argues that Ashelman waived a RFRA argument on appeal by failing to cite it in his pro se brief; that the Act is unconstitutional;[5] that it would be unfair to apply RFRA's more stringent burdens retroactively; and that in any event, the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A), modifies RFRA's guarantees when prison restrictions are at issue. We do not reach any of these issues, however, because we conclude that the magistrate judge failed to take alternatives into consideration that are dispositive in shifting the balance in Ashelman's favor even under the more lenient test of *O'Lone* and *Turner*.

**B**

██ Ashelman argues that the magistrate judge erroneously focused on the cost to DOC of providing a kosher diet through three frozen kosher meals per day, when that is not necessary. He submits that DOC could provide whole fruits, vegetables, nuts, tinned fish, dairy products, and kosher cereals that would satisfy the laws of kashruth, and serve them on disposable plates with disposable utensils—which also would satisfy kashruth. Most of these things are "off-the-shelf" and nothing in the record suggests that the cost would be appreciable. Further, Ashelman points out that other prison systems, including the federal system and the New York State system, provide completely kosher diets. The warden doesn't really disagree, but contends that nothing in the record indicates that the dietary supplements suggested by Ashelman would be nutritionally adequate. In addition, DOC is concerned that affording the Jewish population special food items could be regarded as preferential treatment and cause resentment by other inmates.

We are guided by our decisions in *Ward v. Walsh*, 1 F.3d 873 (9th Cir.1993), *cert. denied*, 510 U.S. 1192, 114 S.Ct. 1297, 127 L.Ed.2d 649 (1994), and *McElyea v. Babbitt*, 833 F.2d 196 (9th Cir.1987). *McElyea* held

that "[i]nmates ... have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *Id.* at 198. In *Ward*, we had to weigh the free exercise rights of an Orthodox Jewish prisoner at Ely State Prison in Ely, Nevada to a kosher diet against budgetary and administrative concerns of the prison. In doing so, we made it clear that reasonable alternatives must be considered. As we emphasized, " '[t]he absence of ready alternatives is evidence of the reasonableness of a prison regulation,' [*Washington v. Harper*, 494 U.S. 210, 225, 110 S.Ct. 1028, 1038, 108 L.Ed.2d 178 (1990) ], while the existence of alternatives may be 'evidence that the [policy] is not reasonable but is an 'exaggerated response' to prison concerns,' *Turner*, 482 U.S. at 90–91, 107 S.Ct. at 2262." *Ward*, 1 F.3d at 879.

Ward complained that the Ely State Prison provided a pork-free diet to inmates who request it, but not a full kosher diet. Considering the *Turner* factors, we acknowledged that the prison has a legitimate interest in running a simplified food service, and that accommodating Ward's request would cause some disruption to the efficient operation of food services.[6] We recognized that requiring a believer to defile himself by doing something that is completely forbidden by his religion is different from (and more serious than) curtailing various ways of expressing beliefs for which alternatives are available. We accepted the warden's contention that other prisoners who are not similarly accommodated might perceive Ward as being favored, yet did not weigh it heavily as this effect is always present when special accommodations are made for religious beliefs. Finally, we noted the possibility of providing Ward with non-defiled foodstuffs, even if the dining area is not kept kosher, and of accommodating the Jewish dietary laws in substantial part at de minimis cost; however, we remanded for further findings

---

5. We held otherwise in *Mockaitis v. Harcleroad*, 104 F.3d 1522, 1530 (1997), although the Supreme Court has granted certiorari on that issue. *See Flores v. City of Boerne*, 73 F.3d 1352 (5th Cir.), *cert. granted*, —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 212 (1996).

6. We stopped short of factoring disruption into the balance because the district court made no findings on the financial impact of the accommodation. *Ward*, 1 F.3d at 879.

because the record did not permit us to determine whether reasonable alternatives to the prison's policy existed.

Here, we don't have that problem. Unlike that in *Ward*, the record in this case does permit us to determine that reasonable alternatives to the prison's policy of providing one frozen kosher TV-dinner, supplemented with vegetarian or nonpork meals, do exist. The warden virtually concedes that Ashelman's kosher TV-dinner could be supplemented with whole fruits, vegetables, nuts, and cereals that are not tough to come by. While nutrition concerns are legitimate, there is no evidence that they are greater with the diet that Ashelman proposes than with the diet that he has been provided, which he could not eat. The evidence shows that disposable utensils are also available, at modest cost. And the warden himself proposed a program (in 1984) that would have substantially satisfied Ashelman's dietary requirements, but which for some reason wasn't pursued. The evidence also shows that the prison accommodates the dietary requirements of other religious groups, including Muslims, Sikhs, and Seventh–Day Adventists, without disruption. Under these circumstances, it does not appear that the difficulties envisioned by the prison are insurmountable. To the contrary, this evidence of "obvious, easy alternatives" shows that the policy is unreasonable as applied to Ashelman.

The existence of reasonable alternatives decisively tips the balance in favor of Ashelman's free exercise right. Accordingly, the prison must provide a diet sufficient to sustain Ashelman in good health without violating the laws of kashruth.

### IV

The warden argues that the magistrate judge clearly erred in finding that prison officials prevented Ashelman from resting and fasting on holy days as required by Orthodox Judaism. We agree, because there is no evidence that prison officials ever interfered with Ashelman's religious observances.

Ashelman testified that he had once asked to fast for ten days between the Jewish holidays Rosh Hashanah and Yom Kippur, but never claimed that his fast was prohibited by prison officials. A rabbi who testified about which Jewish holidays require resting and fasting said that Ashelman had never complained to him that he was forced to work on a holiday. Absent any evidence indicating any burden on these aspects of Ashelman's faith, there was no basis for enjoining the prison from doing something that it had not ever done.

We therefore reverse and remand to the district court for it to vacate that part of its judgment ordering the prison to allow Ashelman to refrain from labor and to fast on those days, and to fashion an appropriate order requiring Ashelman to be provided a diet sufficient to sustain him in good health without violating the laws of kashruth.

REVERSED AND REMANDED.