**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CLARENCE EUGENE JONES,
*Plaintiff-Appellant*,

v.

MAX WILLIAMS, in his official and individual capacity as Corrections Director for the Oregon Department of Corrections; COLLETTE PETERS, in her official capacity and individual capacity as Inspector General of Oregon Department of Corrections; TIM O'CONNORS, in his official capacity and individual capacity as Administrator of Religious Services; CHAPLAIN HOLBROOK, in his official and individual capacity as Chaplain of the Oregon State Penitentiary; KEITH DAVIS, in his official and individual capacity as Food Service Manager of the Oregon State Penitentiary; D. GILLIES, in his official and individual capacity as Assistant Food Manager of the Oregon State Penitentiary; R. RIDDERBUSCH, in his official and individual capacity as Assistant Food Manager of the Oregon State Penitentiary; LARRY KUTNAR, in his

No. 12-35131

D.C. No.
6:09-cv-00029-
TC

OPINION

official and individual capacity as Lieutenant and Food Service Coordinator; G. MCBRIDE, in his official and individual capacity as Food Service Coordinator of the Oregon State Penitentiary; R. NOPP, in his official and individual capacity as Food Service Coordinator at the Oregon State Penitentiary; AARON BALES, in his official and individual capacity as Grievance Coordinator of the Oregon State Penitentiary; MICHAEL DODSON, in his official and individual capacity as Discrimination Complaint Officer at the Oregon State Penitentiary; BRIAN BELLEQUE, in his official and individual capacity as Superintendent of the Oregon State Penitentiary; LAURIE MINCHER, in her official and individual capacity as Food Service Coordinator at the Oregon State Penitentiary; KEITH BALLER, in his individual capacity as an inmate assigned as a cook at the Oregon State Penitentiary; M. WHITNEY DODSON, in his official and individual capacity as supervisor of Grievance Coordinator at the Oregon State Penitentiary,

*Defendants-Appellees*.

Appeal from the United States District Court
for the District of Oregon
Ann Aiken, Chief District Judge, Presiding

Submitted October 6, 2014[*]
Portland, Oregon

Filed June 26, 2015

Before:  Alex Kozinski, Ferdinand F. Fernandez,
and Andre M. Davis,[**] Circuit Judges.

Opinion by Judge Davis

**SUMMARY**[***]

### **Prisoner Civil Rights**

The panel affirmed in part and reversed in part the district court's summary judgment and remanded in an action brought under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act by a Muslim inmate whose

---

  [*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

  [**] The Honorable Andre M. Davis, Senior Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

  [***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

religious beliefs forbid him from consuming or handling pork.

Affirming the district court's' summary judgment in favor of appellees on the claims brought under the Religious Land Use and Institutionalized Persons Act, the panel held that under *Sossamon v. Texas*, 131 S. Ct. 1651, 1658–59 (2011), and *Wood v. Yordy*, 753 F.3d 899, 903–04 (9th Cir. 2014), appellant could not obtain the monetary relief he sought. The panel further determined that the claims for injunctive relief were moot because appellant had been released.

Addressing appellant's three free exercise claims brought under § 1983, the panel first affirmed the district court's summary judgment in favor of appellees on the claim arising from the events of May 31, 2007. The panel held that appellant's evidence was not sufficient to raise an issue of fact as to whether a tamale pie contained pork or whether the prison's food service coordinator ordered cooks to add pork to the dish. The panel reversed the grant of summary judgment on a § 1983 claim arising from the events of July 8, 2007, and held that defendants were not entitled to qualified immunity from appellant's claim that he was ordered to cook pork loins as part of his job duties in the kitchen. The panel affirmed the district court's summary judgment in favor of appellees on appellant's claim challenging the prison's method of cleaning grills on which meats served to inmates are cooked.

Addressing appellant's First Amendment retaliation claim, the panel held that there were genuine issues as to whether a food services manager retaliated against appellant for his complaints of discrimination and his threat to sue.

The panel affirmed the district court's summary judgment in favor of prison officials on appellant's equal protection claim arising from an altercation. The panel determined that appellant pointed to no evidence that his placement in disciplinary segregation and subsequent proceedings against him were motivated by the fact that he is African-American.

## COUNSEL

Clarence Eugene Jones, Portland, Oregon, pro se.

Denise Gale Fjordbeck, Assistant Attorney General, Oregon Department of Justice, Salem, Oregon, for Defendants-Appellees.

## OPINION

DAVIS, Circuit Judge:

Clarence Jones, a former inmate of the Oregon State Penitentiary ("the Penitentiary"), appeals from the district court's grant of summary judgment in favor of Appellees, fifteen employees of the Oregon Department of Corrections ("the Department"),[1] on several civil rights claims brought under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.

---

[1] An inmate, Keith Baller, is also named as a defendant-appellee. Although Baller did not move for summary judgment and the district court did not specifically address this claim, the district court entered judgment in favor of all defendants. Jones does not challenge the dismissal of this claim on appeal, and therefore any error is waived.

§§ 2000cc–2000cc-5.  We affirm in part, vacate in part, and remand to the district court for further proceedings.

## I.

## A.

Jones is a Muslim and a member of the Nation of Islam, a religious organization.  His religious beliefs forbid him from consuming or handling pork.

Jones's claims arise from the following events, which we recount in chronological order.  From October 2006 to October 2008, while in custody of the Department, Jones was assigned to work in the kitchen at the Penitentiary, initially as a server on the food service line.  Shortly after his assignment to the food service line, Jones complained to his supervisors about being required to serve pork food items and requested to be reassigned from the serving line to a kitchen-entry position, which would allow him to avoid handling pork.  According to Jones, he and other black inmates were required to work at least thirty days on the line before they could work in a kitchen-entry position, whereas certain white inmates were not subject to a thirty-day waiting period.  Jones alleges that in November 2006, Appellee Keith Davis, Food Services Manager at the Penitentiary, told Jones that the prison would take disciplinary action against him if he refused orders to serve or handle pork.  On January 7, 2007, Jones filed an administrative discrimination complaint describing Davis's threats of disciplinary action and citing case law in support of his asserted right to abstain from handling pork.

On January 8, 2007, Jones approached Appellee Richard Ridderbusch, an Assistant Food Services Manager, to discuss

his requests for reassignment. Jones told Ridderbusch that he would file a lawsuit in federal court against Ridderbusch for discrimination. The parties dispute the circumstances of the interaction between Jones and Ridderbusch. Jones declares that there were between 30 and 40 inmates working in the kitchen at the time but that none were in the immediate area or could hear the conversation. Ridderbusch declares that 40 to 50 inmates were working in the immediate area. Ridderbusch also declares that Jones accused him of being a racist and acted in a threatening and inflammatory manner, which resulted in "a serious risk that other inmates would become riled creating a security concern." Ridderbusch subsequently issued a daily performance failure report.[2] The report stated as reasons for the assessment "attitude" and that Jones "accused [Ridderbusch] of discriminating in hiring, threatened to sue in fed[eral] court, [and] was not reciptive [*sic*] to earning his way." The daily performance failure resulted in Jones not receiving points for that day toward awards of program incentives.

Jones was taken off the food service line and reassigned as a cook on February 7, 2007.

On March 9, 2007, Appellee Brian Belleque, Superintendent of the Penitentiary, responded in writing to Jones's January 7, 2007 administrative discrimination complaint. In the response memorandum, Belleque stated

---

[2] The Department administers a Performance Recognition and Award System of monetary awards and other incentives to recognize and encourage good institutional conduct. Inmates with work assignments in the program are either granted or denied points based on a daily assessment of their performance quality and effort, interpersonal communications, and other factors.

that there was "no current policy" governing the issue raised by Jones but that "there is no need to require Muslim inmates to handle pork."  The memorandum continued: "As a Muslim, you should notify your supervisor of your religion and that you are not allowed to handle pork.  Every effort will be made to provide a work program that does not require you to handle pork."

When serving food items containing pork, the prison had a practice of displaying a sign to indicate the items' pork contents.  On May 31, 2007, Jones obtained a tamale pie for lunch.  There was no sign displayed indicating that the item contained pork.  Jones ate a few bites of the tamale pie before Raymond Mayes, another inmate, told Jones that the item contained pork.  Mayes states in his affidavit that he told Jones "that the tamale pie contained pork because [Appellee Richard Nopp, a Food Service Coordinator working in the kitchen that day,] had pork mixed in with the beef for the making of the tamale pie for lunch . . . ."  Jones declares that, on June 2, 2007, Tom Peacock, a cook, told Jones that Nopp had ordered Peacock to add pork to the meat in the tamale pie and that Peacock added pork as directed while Nopp watched.  Nopp denies ordering cooks to add pork to the meat in the tamale pie and declares that no pork was added to the tamale pie.

On July 8, 2007, Appellee G. McBride, a Food Service Coordinator, ordered Jones to fry pork loins.  Jones alleges that he told McBride that he was a Muslim and that cooking pork was against his religious beliefs, but that McBride threatened to issue a daily performance failure or possibly a misconduct report if Jones refused the order.  Jones declares that he complained to Appellee Larry Kutnar, McBride's supervisor, and, after speaking with McBride and

Ridderbusch, Kutnar told Jones that "those up high" had ordered that Jones prepare the pork loins. Jones prepared the pork loins as ordered, which required him to dip the loins into a flour mixture, cook them on grills, and then place them in pans.

On July 10, 2007, with Davis present, Ridderbusch told Jones that he had been ordered to prepare pork loins because the last memorandum Ridderbusch received said it was permissible for Jones to prepare pork. Ridderbusch stated, however, that he discovered a new memorandum issued in January 2007 stating that Muslim inmates should not be ordered to serve or prepare pork.[3] Ridderbusch claims that he was not aware of the new memorandum until after Jones was ordered to cook pork on July 8, 2007. The same day, Jones complained to Davis and Ridderbusch that the grills in the kitchen were contaminated with pork grease by Islamic standards, and, according to Jones, Davis acknowledged the contamination.

On October 29, 2008, Jones and Glen Leonard, a white inmate, got into an argument in the presence of Appellee Laurie Mincher, a Food Service Coordinator. At some point, Leonard walked up close to Jones, and Jones placed his hand on Leonard's chest and pushed him backward. Mincher intervened, took Jones to disciplinary segregation, and issued a misconduct report describing the incident and charging Jones with "Assault 3," a violation of prison rules. Colleen Clemente, a Hearings Officer at the Penitentiary,

---

[3] The March 9, 2007 memorandum responding to Jones's January 7, 2007 administrative discrimination complaint states that copies of the memorandum were to be sent to Davis and others, but the list does not include Ridderbusch, Kutnar, or McBride.

subsequently convened disciplinary hearings on November 5, and December 1, 2008. Witness testimony and an investigation report were presented at the hearings. Clemente found that Jones committed a unilateral attack on another inmate in violation of prison rules and recommended disciplinary action against Jones.

### B.

Jones filed suit in the United States District Court for the District of Oregon against Appellees in their individual and official capacities. Jones's complaint alleges that Appellees violated free speech and free exercise rights guaranteed by the First and Fourteenth Amendments, and equal protection rights guaranteed by the Fourteenth Amendment. Jones seeks monetary damages and injunctive relief under § 1983 and RLUIPA. Appellees moved for summary judgment. Jones opposed the motion in a Response and Sur-Response, to which Appellees replied. The district court adopted the findings and recommendation of the magistrate judge and granted summary judgment in favor of Appellees on all of Jones's claims. Jones appeals.

### II.

We review the district court's grant of summary judgment de novo. *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994) (per curiam). "Summary judgment is only appropriate if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). "In order to carry its burden of production, the moving party must either produce

evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

## A.

Jones cannot obtain the monetary and injunctive relief he seeks under RLUIPA. The statute provides that a person asserting a violation of the statute "as a claim or defense in a judicial proceeding" may "obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). In *Sossamon v. Texas*, the Supreme Court held that RLUIPA's use of the phrase "appropriate relief" is not an unequivocal expression of state consent to private suits for monetary damages and therefore does not operate to effect a waiver of the states' sovereign immunity from such suits. 131 S. Ct. 1651, 1658–59 (2011); *see also Oklevueha Native Am. Church of Haw. v. Holder*, 676 F.3d 829, 840–41 (9th Cir. 2012). Additionally, as we recognized in *Wood v. Yordy*, RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding and nothing in the statute suggests any congressional intent to hold them individually liable. 753 F.3d 899, 903–04 (9th Cir. 2014).

Jones's RLUIPA claims for injunctive relief are moot because Jones has been released from custody.[4] Federal

---

[4] We take judicial notice of the fact that Jones was released during the pendency of this appeal. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

courts lack jurisdiction over claims that have been rendered moot because "the issues presented are no longer live" or because the parties no longer possess "a legally cognizable interest in the outcome." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Alvarez*, 667 F.3d at 1064 (quoting *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007)). Jones has been removed from the environment in which he was subjected to the alleged RLUIPA violations. The record discloses no evidence of continuing effects of the alleged violations on Jones and no reasonable expectation that Appellees could violate Jones's rights in the future. *See Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 854 (9th Cir. 1985). In this situation, any injunctive relief ordered in Jones' favor "would have no practical impact on [his] rights and would not redress in any way the injury he originally asserted." *Incumaa*, 507 F.3d at 287.

Accordingly, we affirm the district court's grant of summary judgment in favor of Appellees on all of Jones's RLUIPA claims.

## B.

We now turn to Jones's three § 1983 free exercise claims.

A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion. *Graham v. C.I.R.*, 822 F.2d

844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

"The right to exercise religious practices and beliefs does not terminate at the prison door[,]" *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)), but a prisoner's right to free exercise of religion "is necessarily limited by the fact of incarceration," *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993) (citing *O'Lone*, 482 U.S. at 348). "To ensure that courts afford appropriate deference to prison officials," the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. The challenged conduct "is valid if it is reasonably related to legitimate penological interests." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).[5]

---

[5] The factors to be considered in assessing the reasonableness of practices that burden prisoners' constitutional rights are well established: (1) whether there is a "'valid, rational connection'" between the conduct of prison officials and "the legitimate governmental interest put forward to justify it"; (2) "whether there are 'alternative means of exercising the right that remain open to prison inmates'"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates,

Jones asserts three § 1983 free exercise claims, all rooted in his religious beliefs against consuming and handling pork.

1.

The first claim arises from the events of May 31, 2007. Jones alleges that he was served and ate part of a tamale pie without having been notified of its pork contents. Nopp declares, however, that he did not order cooks to add pork to the tamale pie and that the tamale pie did not contain pork.

Jones's evidence is not sufficient to raise an issue of fact as to whether the tamale pie contained pork and or whether Nopp ordered cooks to add pork to the dish. The unsworn statements of the inmate cook who told Jones that Nopp had directed the cook to mix pork in with the meat used in the tamale pie are hearsay, *see* Fed. R. Evid. 801(c), and cannot properly be considered in opposition to a summary judgment motion. *See* Fed. R. Civ. P. 56(c)(4); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (holding that it was an abuse of discretion for the district court, at the summary judgment stage, to consider information from an affidavit based on inadmissible hearsay rather than the affiant's personal knowledge). Raymond Mayes, another inmate kitchen worker, states in an affidavit that he told Jones and Appellee Michael Dodson that Nopp had pork mixed in with the tamale pie meat, but Mayes's statements to Jones and Dodson were unsworn. References to such unsworn statements are insufficient to generate a genuine dispute of fact. Therefore, we affirm summary judgment in favor of

and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives" to the prison's practice. *Ward*, 1 F.3d at 876 (quoting *Turner*, 482 U.S. at 89–90).

Appellees on the § 1983 claim arising from the events of May 31, 2007.

### 2.

Jones's second § 1983 free exercise claim arises from the events of July 8, 2007. Jones alleges that he was ordered to cook pork loins as part of his job duties in the kitchen at the Penitentiary. The district court held that Appellees are entitled to qualified immunity from this claim. We disagree.

The doctrine of qualified immunity "seeks to ensure that defendants reasonably can anticipate when their conduct may give rise to liability . . . by attaching liability only if the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right[.]" *United States v. Lanier*, 520 U.S. 259, 270 (1997) (internal quotation marks, alterations, and citations omitted). "Government officials are not entitled to qualified immunity if (1) the facts '[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendants'] conduct violated a constitutional right' and (2) the right was clearly established at the time of the alleged violation." *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

It was well established in 2007, and remains so today, that government action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego her sincerely held religious beliefs or to engage in conduct that violates those beliefs. *See Sherbert v. Verner*, 374 U.S. 398, 404, 406 (1963); *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18

(1981); *Guru Nanak Sikh Soc'y*, 456 F.3d at 988. "[R]equiring a believer to defile himself by doing something that is completely forbidden by his religion is different from (and more serious than) curtailing various ways of expressing beliefs for which alternatives are available." *Ashelman v. Wawrzaszek*, 111 F.3d 674, 677 (9th Cir. 1997). In *Ashelman*, for example, we held that a Jewish inmate had the right to a kosher diet and disposable utensils. *Id.* at 678. We explained that, in the case of dietary restrictions, the inmate had no alternative means of exercising the right, whereas there were "obvious, easy alternatives" that the prison could implement. *Id.* (internal quotation marks omitted). "The existence of reasonable alternatives decisively tip[ped] the balance in favor of [the inmate's] free exercise right." *Id.*; *see also McElyea*, 833 F.2d at 198.

These constitutional principles apply with "obvious clarity" here and provided a "fair and clear warning" that Jones had a right to abstain from conduct directly violative of his religious beliefs. *Lanier*, 520 U.S. at 271. Ordering a Muslim prisoner to handle pork requires him "to defile himself by doing something that is completely forbidden by his religion." *Ashelman*, 111 F.3d at 677. And there are no alternative means of allowing Jones to exercise his right to avoid handling pork besides not ordering him to handle pork. Accommodating Jones's right to avoid handling pork isn't less burdensome than the religious-based accommodations, such as providing Kosher diets and disposable utensils, that we have held for many years are constitutionally required. Indeed, several months before Jones was ordered to handle pork, Superintendent Belleque informed Jones that "there is no need to require Muslim inmates to handle pork." Belleque's memo strongly indicates that assigning Jones a task that did not require him to violate his religious beliefs

was a ready option and would not significantly affect prison personnel, other inmates, or the general allocation of prison resources.

"We may also look to the law of other circuits to determine if a principle is clearly established." *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 846 (9th Cir. 2010). Between 1974 and 2006, four other circuits held that prisoners have the free exercise right to avoid handling certain foods as part of their work duties. *See Williams v. Bitner*, 455 F.3d 186, 193–94 (3d Cir. 2006) (finding this right clearly established); *Hayes v. Long*, 72 F.3d 70, 74 (8th Cir. 1995) (same); *Kenner v. Phelps*, 605 F.2d 850, 851 (5th Cir. 1979); *Chapman v. Kleindienst*, 507 F.2d 1246, 1251–52 (7th Cir. 1974).

Appellees nevertheless argue that they are entitled to qualified immunity because ordering Jones to cook pork was "in furtherance of what the ordering officers understood the prison's policy to be at the time." To be sure, in certain cases, the "information possessed by the officer" may be a factor in determining whether an officer is entitled to qualified immunity. *See Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007) (internal quotation marks omitted). But this is an objective inquiry. "The subjective beliefs of the actual officer are, of course, irrelevant." *Id.* (internal quotation marks omitted). Here, there is at least an issue of material fact as to what a reasonable officer at the Penitentiary should have known on July 8, 2007. Several months before McBride ordered Jones to cook pork loins, the Penitentiary implemented a new policy providing that an inmate could opt out of handling pork on religious grounds. And Jones alleges that he told the officers in charge that he had the right to not handle pork. That some officers claim they were not

personally aware of the policy change or Belleque's memo to Jones is not sufficient to show that Jones's right to avoid handling pork was not clearly established.

In sum, viewing the record in the light most favorable to Jones, Appellees' conduct violated Jones's clearly established right to avoid handling pork on the basis of his religious beliefs. On this record, Appellees are not entitled to qualified immunity.[6]  Therefore, we reverse the grant of summary judgment on the § 1983 claim arising from the events of July 8, 2007, and remand the claim to the district court for further proceedings.

3.

Jones's third § 1983 free exercise claim challenges the prison's method of cleaning grills on which meats served to inmates are cooked.  Workers in the kitchen use vegetable oil and a cinder block to scour the surfaces of grills and then remove the excess grease without use of chemical cleaners or grease removers.  Davis declares that the grills are sanitized by heating before use and that the prison's cleaning practice meets the industry standard for cleaning grills.  Jones and Robert Stephens, a lead cook at the Penitentiary, declare that this method leaves residual amounts of pork grease on the grills.  Additionally, Jones argues that the prison's cleaning

---

[6]  Jones alleges that McBride ordered him to cook the pork loins, but brings this free exercise claim against McBride and eleven other defendants in their individual and official capacities.  We express no opinion on the merits of Jones's individual or official capacity claims against any of the twelve named defendants.  We merely hold that Jones has raised a genuine issue of fact as to whether any defendant is entitled to qualified immunity from Jones's claim that being forced to handle pork violated his free exercise rights.

practices violate Oregon Administrative Rule 291-061-0190(7) and, under Islamic standards, permit contamination of non-pork meats by residual pork grease.

To the extent Jones seeks an injunction ordering a change in the Penitentiary's grill cleaning procedures, his claim is moot because he has been released from custody. We therefore consider the merits of this § 1983 claim only to the extent that Jones seeks damages against Appellees for the constitutional violations that he alleges occurred while he was in custody.

Even assuming that Jones has raised an issue of fact as to whether the grill-cleaning method resulted in the grills being contaminated by Islamic standards or violations of Department regulations, he has failed to show that the prison's grill-cleaning method imposed a substantial burden on his religious exercise. There is no genuine dispute that inmates were presented alternatives to grilled meat at every meal while Jones was in custody.[7] Jones points to no evidence that grilled meat was such an important benefit that he was substantially pressured to eat it and thereby violate his religious beliefs. We have long recognized the prisoner's "right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea*, 833 F.2d at 198. Here, however, Jones has failed to show that he needed grilled meat to remain healthy or to satisfy the dietary requirements of his religion. In the absence of such evidence, Jones cannot show that Appellees' grill-cleaning method imposed a substantial burden on his

---

[7] The menus referenced in Jones's declaration as Exhibits A through H disprove his claim that alternatives to grilled food were not available for morning meals.

religious exercise.    Accordingly, we affirm summary judgment in favor of Appellees on the § 1983 claim challenging the prison's grill-cleaning practices.

C.

Jones also asserts a First Amendment retaliation claim against Ridderbusch under § 1983 arising from Ridderbusch's issuance of a daily performance failure on January 8, 2007. The sanction was issued after Jones confronted Ridderbusch in the Penitentiary's kitchen with complaints of discrimination and a threat to sue.

Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials. *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).    A viable § 1983 claim of retaliation for engaging in activity protected by the First Amendment in the prison context involves the following elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995); *see also Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) ("Prisoners' grievances, unless frivolous . . . , concerning the conditions in which they are being confined are deemed petitions for redress of grievances and thus are protected by the First Amendment."); *Wolfel v. Bates*, 707 F.2d 932, 934 (6th Cir. 1983) (per curiam) (recognizing prisoner's First Amendment right to complain to prison officials about discrimination). Accordingly, Jones's complaints of discrimination to his supervisors and statements of intention to file suit were conduct protected by the First Amendment.

Jones has made a showing in support of the remaining elements of his retaliation claim sufficient to overcome summary judgment. The face of the daily failure form completed by Ridderbusch cites Jones's discrimination complaints and threat to sue as reasons for its issuance, creating a genuine issue as to whether this protected conduct was "the 'substantial' or 'motivating' factor" for the daily performance failure. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation omitted). That the sanction deprived Jones of points toward program incentives is adequate to show that it "'would chill *or* silence a person of ordinary firmness'" from engaging in such protected activities in the future. *Id.* (quoting *Rhodes*, 408 F.3d at 568–69); *see also Rhodes*, 408 F.3d at 567 n.11 (stating that any harm that is "more than minimal will almost always have a chilling effect").

Genuine issues also remain as to whether the daily failure "reasonably advance[d] a legitimate correctional goal."

*Brodheim*, 584 F.3d at 1271. Appellees claim that the daily failure served the penological purpose of maintaining "order and security in a situation where prisoners outnumbered supervisors 20 or 25 to 1[,]" but the document bears no indication of any security issues arising from Jones' behavior. Jones admits that there were dozens of inmates working in the kitchen when he approached Ridderbusch but declares that no inmates were in the immediate area close enough to hear the conversation. Jones also declares that he was not acting in a threatening manner. There was no security issue under this version of events. Jones's account also casts serious doubt on the magistrate judge's conclusion that the sanction was justified by the prison's interests in "appropriate inmate behavior[,]" "inmate rehabilitation and the development of professional attitudes and interpersonal communication." A prisoner's "impolitic choice of words" does not categorically justify punitive action by prison officials that "burdens the prisoner's right of meaningful access to the courts." *Bradley*, 64 F.3d at 1281. On this record, we cannot determine as a matter of law that issuance of the daily failure was justified by the prison's legitimate interests.

For these reasons, we reverse the grant of summary judgment in favor of Ridderbusch on the First Amendment retaliation claim and remand this claim to the district court for further proceedings.[8]

---

[8] The district court did not distinguish between Jones's individual and official capacity claims against Ridderbusch when it granted summary judgment to Ridderbusch. While Jones argues on appeal that Ridderbusch violated his rights because Ridderbusch retaliated against him, Jones does not argue that Ridderbusch had policymaking authority or that his claim against Ridderbusch is "attributable to official policy or custom," *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). We therefore

D.

Finally, Jones asserts a § 1983 equal protection claim based on allegations of racial discrimination in the disciplinary proceedings following his altercation with Leonard on October 29, 2008.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (internal quotation marks omitted). To avoid summary judgment on a claim of racial discrimination, the plaintiff must "produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the challenged action] was racially motivated." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948–49 (9th Cir. 2003) (internal quotation marks and citation omitted). In the prison context, the right to equal protection is "judged by a standard of reasonableness—specifically, whether the actions of prison officials are 'reasonably related to legitimate penological interests.'" *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (quoting *Turner*, 482 U.S. at 89).

There is no dispute that Jones assaulted Leonard and that Leonard did not touch Jones during the altercation. Jones points to no evidence that the resulting placement in disciplinary segregation and subsequent proceedings against

reverse the district court's grant of summary judgment to Ridderbusch on the individual capacity claim only.

him were motivated by the fact that he is African-American and Leonard is white. Accordingly, we affirm summary judgment in favor of Appellees on the equal protection claim.

III.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED in part and VACATED and REMANDED in part.**

**The parties shall bear their own costs on appeal.**