NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 9 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| RUBEN DARIO GARCIA, Jr., | No. 14-56687 |
| Plaintiff-Appellant, | D.C. No. 3:10-cv-01187-BAS-RBB |
| v. |  |
| SMITH, Supervising Correctional Officer; et al., | MEMORANDUM* |
| Defendants-Appellees. |  |

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted July 7, 2016
Pasadena, California

Before: FERNANDEZ, CLIFTON, and FRIEDLAND, Circuit Judges.

Plaintiff-Appellant Ruben Garcia is a prisoner alleging retaliation, equal protection violations, and conspiracy against several prison officials under § 1983. He claims that he was placed in and repeatedly retained in administrative segregation ("Ad-Seg") in retaliation for filing grievances against prison officials;

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

that he was denied a request to be housed with his brother in retaliation for filing grievances; that the same denial also violated his equal protection rights; and that various defendants conspired to retaliate against him by keeping him in Ad-Seg.

Several Defendants were dismissed from the case on summary judgment. Garcia appealed those grants of summary judgment to this court, and this court affirmed. Some claims proceeded to trial, where a jury found in favor of Defendants. Garcia now appeals his post-trial motion for judgment as a matter of law, as well as certain summary judgment claims that were not previously appealed. We affirm in part and reverse in part.

## I. Retaliation Claims

"[P]urely retaliatory actions taken against a prisoner for having exercised [the right to file grievances] . . . violate the Constitution." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). A "§ 1983 claim of retaliation for engaging in activity protected by the First Amendment in the prison context involves the following elements: '(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.'" *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (quoting *Rhodes*, 408 F.3d at 567-68).

2

We affirm the denial of Garcia's post-trial motion for judgment as a matter of law. *See* Fed. R. Civ. P. 50(b). Garcia failed to prove at trial that Vasquez, Chance, and Stewart took the "adverse action" he complained of—placing him in Ad-Seg. Indeed, the jury heard evidence that these Defendants were of insufficient rank even to make Ad-Seg placement decisions.[1]

We reverse the grant of summary judgment as to Suglich, Cortez, and Contreras' decision, as members of the Institutional Classification Committee ("ICC"), to retain Garcia in Ad-Seg on July 29, and as to Suglich's initial determination regarding the same on July 27. Garcia presented evidence[2] that at the ICC hearing, when he asserted his belief that he was being retaliated against, Contreras replied, "[y]ou should [have] thought about that before you go around accusing Staff to the courts." Although Contreras denied making this statement, the fact dispute over whether he did raises a triable issue as to the alleged retaliatory motivation behind the ICC's actions.

Moreover, there are inconsistencies in the reasons given for the Ad-Seg order, including as to the number of investigations that prompted the placement,

---

[1] Because we reject Garcia's arguments on the merits, we need not address Defendants' request that we dismiss the Rule 50(b) appeal for failure to follow appellate procedural rules.

[2] Garcia's verified complaint—signed under penalty of perjury that the contents are true and correct—may be considered an opposing affidavit for summary judgment purposes. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & n.10 (9th Cir. 1995).

and as to whether an investigation that began in April 2008 could have been the reason for Garcia's placement in Ad-Seg in July 2009. When considered alongside Contreras's purported retaliatory statement, these factual inconsistencies and vagaries raise material questions about Defendants' proffered rationales.

Similarly, Garcia has raised a genuine issue of fact as to whether Suglich's July 27 decision to keep him in Ad-Seg was retaliatory. Suglich's review form made no mention of the incident in the dining hall that he later offered as the reason for the placement, but referred only to a much earlier complaint, which was then "pending review." Furthermore, although Suglich declared that his Ad-Seg decision on July 27 was based solely on the fact of the pending investigations, his review form indicated that the Ad-Seg placement was for "disciplinary reasons."

Defendants' argument that placing Garcia in Ad-Seg served legitimate correctional goals fails. Garcia has raised triable issues of fact as to Defendants' retaliatory motives for retaining him in Ad-Seg, and a reasonable jury could conclude that Defendants' proffered correctional goals—that removing an inmate who makes excessive force claims to Ad-Seg is necessary to "preserve[] the integrity of the investigation and protect[] the inmate from coming into contact with the allegedly abusive staff"—are pretextual. *See Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (noting that "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general

4

justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right"); *see also id.* ("[I]f, in fact, the defendants abused the gang validation procedure as a cover or a ruse to silence and punish [the plaintiff] because he filed grievances, they cannot assert that Bruce's validation served a valid penological purpose, even though he may have *arguably* ended up where he belonged."). Garcia points to a lack of any evidence as to how Defendants' purported policy advances the correctional goals of preserving the integrity of the excessive force investigations or keeping Garcia himself safe, and Defendants provide no rebuttal to this factual deficit. Defendants cite Cal. Code Regs. tit. 15 § 3335(a), but that regulation merely states, as a general matter:

> When an inmate's presence in an institution's general [inmate] population . . . presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct . . . the inmate shall be immediately removed from the [general population] and be placed in administrative segregation.

There is no evidence that keeping Garcia in the general population would have posed an immediate threat to safety or endanger prison security. Nor does the record show that segregating an inmate who has alleged being a victim of excessive force will "preserve[] the integrity of the investigation." Defendants also offer no explanation why segregating an inmate from the general *inmate* population will keep him safe from *guards* who may seek to do him harm, even

5

though Defendants' arguments on appeal suggest that keeping Garcia safe from guards was the motivation for the placement. There is thus at least a triable issue as to whether Garcia's retention in Ad-Seg was justified by legitimate correctional goals. *See Jones*, 791 F.3d at 1029 (reversing a grant of summary judgment on a prisoner's retaliation claim in part because the correctional goal advanced by the defendant found no support in the evidence).

We also reverse the grant of summary judgment as to Suglich, Cortez, and Contreras' decision to retain Garcia in Ad-Seg on September 10, and as to Suglich's classification of the Rules Violation Report ("RVR") as "serious." Although Defendants assert in their declarations that they could not confirm Garcia's proffered justifications for refusing his housing assignment, the evidence presented in Garcia's verified complaint potentially rebuts those assertions. Garcia asserts that at the ICC hearing, an officer present, Newman, stated that "I am aware that inmate Garcia is restricted from being housed with black, white, or Mexican inmates . . . Garcia['s] file clearly documents that fact . . . he is not supposed to be housed with [M]exican inmates, he is here because they try to house him with . . . I don't see how, I personally filed all this information with records." Garcia further asserts that Defendants "proceeded to confirm such housing restrictions by reviewing documents within [his] central file . . . Defendants proceeded to act with a total disregard to such information and . . .

6

ordered that [he] be retain[ed] in punitive Administrative Segregation."

Particularly taking into account the ICC's possibly retaliatory decisions in July, Garcia has raised a triable issue as to the retaliatory nature of Defendants' decision here.

Garcia also raises a genuine issue as to Suglich's categorizing the RVR as "serious." The record indicates that Suglich reviewed the RVR and marked it as "serious" on September 14. Yet the ICC review occurred on September 10, and the ICC form states that it considered the RVR. If indeed the ICC reviewed Garcia's records at the hearing on September 10 and determined that Garcia's housing refusal was justified but kept him in Ad-Seg anyway, then Suglich's deeming the RVR "serious" four days later could have been retaliatory as well. Although Defendants point out that, as a matter of prison regulations, Suglich was required to categorize as "serious" an RVR for refusing to accept a housing assignment, if Suglich by September 10 had already determined that the RVR was meritless, the regulation would seem not to require him to categorize it at "serious" on September 14.

Finally, we reverse the grant of summary judgment as to Suglich's refusal of Garcia's request to be housed with his brother. In his verified complaint, Garcia asserted that when he was brought into Suglich's office to discuss his housing request, Suglich told him:

7

> [A]s long as you are in this facility you will never, never be allowed to cell-up with your[] ex-cellie Garcia . . . this is my yard and you are creating to[o] much proble[m]s. . . . [B]ecause of the grievances and litigation you guys have going on with the Department we are going to ensure that you guys are not allowed to cell-up together.

Defendants never attempt to rebut this account, and Defendants offer no legitimate penological interest that was served by denying Garcia's housing request.[3]

Contrary to Defendants' argument, the fact that inmates have no right to house with a sibling is irrelevant. Garcia does not claim that refusing his housing request was a standalone constitutional violation; instead, he is arguing that refusal to grant that request was the "adverse action" taken in retaliation for his filing of grievances. As we have explained, "[t]o succeed on [a] retaliation claim, [a plaintiff] need not establish an independent constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his *First Amendment* rights by retaliating against him for his protected speech activities." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Garcia has raised triable issues of fact as to First Amendment retaliation.[4]

---

[3] The district court disregarded Suglich's statement, concluding that it was a mere allegation and could not be considered as evidence on summary judgment. As discussed above, however, a verified complaint serves as an opposing affidavit for summary judgment purposes.

[4] Defendants mention that Garcia has not proffered any evidence as to which particular defendant actually denied his cell move request, but his verified

## II.    Equal Protection Claims

We affirm the grant of summary judgment on Garcia's claim that Suglich singled him out for disparate treatment when Suglich denied his housing request. This court held in the prior appeal that "Garcia failed to raise a genuine dispute of material fact as to whether similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose." *Garcia v. Smith*, 588 F. App'x 711, 711-12 (9th Cir. 2014) (unpublished). The law of the case doctrine thus bars Garcia from again raising this claim against Suglich. *See Jeffries v. Wood*, 114 F.3d 1484, 1488-89 (9th Cir. 1997) (en banc), *overruled on other grounds*, *Gonzalez v. Arizona*, 677 F.3d 383, 389 (9th Cir. 2012) (en banc). We find Garcia's arguments against application of the law of the case doctrine in this instance unpersuasive.

## III.    Conspiracy Claims

We affirm in part and reverse in part the grant of summary judgment on Garcia's conspiracy claims. Regarding Suglich, Cortez, and Contreras, Garcia raises a genuine issue as to whether they had conspired to retaliate against him. As members of the ICC, they each necessarily came to a meeting of the minds in deciding to retain Garcia in Ad-Seg. Because there is an issue of fact as to their

---

complaint strongly implies that Suglich was at least one of the decisionmakers. There is at least a triable issue of fact in that regard.

retaliatory motive and penological justifications, there is also a triable issue as to the conspiracy claim against them. *See Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (to support a claim of conspiracy under § 1983, a plaintiff must establish "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement" (quoting *Avalos v. Baca*, 517 F. Supp. 2d 1156, 1169-70 (C.D. Cal. 2007)).[5]

Regarding Stewart, Chance, and Vasquez, aside from Garcia's failed allegations that these defendants retaliated against him by placing him into Ad-Seg on July 25, Garcia points to no evidence linking them to any allegedly retaliatory actions. His conspiracy claim as to these defendants therefore fails.

As for Wall and Smith, although Garcia alleges that they made statements that could potentially support individual claims of retaliation, he provides no evidence that either of them had any meeting of the minds with any other

---

[5] We note that "[c]onspiracy is not itself a constitutional tort under § 1983" and is generally used to "enlarge the pool of responsible defendants by demonstrating their causal connections to the [underlying constitutional] violation." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012). Here, because the conspiracy alleged is a conspiracy to violate the same constitutional rights that Garcia pursues against Suglich, Cortez, and Contreras individually, Garcia's framing of the same alleged violations as a conspiracy claim appears to add nothing to this case as a practical matter.

10

Defendant to retaliate against him. Garcia's conspiracy claims against Wall and

Smith thus fail.

**AFFIRMED IN PART and REVERSED IN PART.**[6]

---

[6] We hasten to add that, other than with regard to Garcia's post-trial motion for judgment as a matter of law, statements about the facts in this disposition are based on the record at summary judgment and are not meant to establish those facts as the law of the case.

No. 14-56687, *Garcia v. Smith, et al.*

CLIFTON, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent, in part. I would affirm the district court's judgment in its entirety.

I do not believe that Plaintiff Garcia presented evidence sufficient to establish genuine disputes of material fact. Most importantly, I focus on the majority's objection, above at 4–5, that Defendants failed to present evidence to support the purported prison policy that caused Plaintiff to be transferred to administrative segregation. I have no difficulty discerning how the policy served legitimate penological purposes. If an inmate complains about excessive force by corrections officers, it make obvious sense to put the prisoner into what amounted to protective custody, to protect both the integrity of the investigation and the prisoner from alleged abusers. We might think there was a better way to accomplish those results, but we are not experts. Plaintiff presented no evidence to the contrary. Our speculation should not fill in for Plaintiff's lack of evidence.