**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

GAIL VINCENT,

                Plaintiff-Appellant,

  v.

BELINDA STEWART, Correctional
Program Administrator, DOC;
WASHINGTON STATE DEPARTMENT
OF CORRECTIONS; BERNARD
WARNER, Secretary, DOC; JOE
WILLIAMSON, Facility Food Manager,
SCCC; BRENT CARNEY; PAT DOE 1,
Religious Dietary Final Policy Makers;
PAT DOE 2, Religious Dietary Final
Policy Makers,

                Defendants-Appellees.

No.   17-35487

D.C. No.
3:16-cv-05023-RBL-TLF

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted December 4, 2018
Seattle, Washington

Before:  W. FLETCHER, BYBEE, and WATFORD, Circuit Judges.

---

      [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appellant Gail Vincent appeals the district court's order granting summary judgment to various prison officials (collectively, "defendants") of the Washington State Department of Corrections ("Department") on his claims that they violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment.[1]  We have jurisdiction under 28 U.S.C. § 1291, and we reverse in part and affirm in part.

We review a district court's grant of summary judgment de novo.  *Shakur v. Schriro*, 514 F.3d 878, 883 (9th Cir. 2008).  "Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law."  *Toguchi v. Chung*, 391 F.3d 1051, 1056 (9th Cir. 2004) (internal quotations and citation omitted).

**1.**  We conclude that the district court incorrectly granted summary judgment on Vincent's RLUIPA claim.  To state a claim under RLUIPA, Vincent must show that the state placed a substantial burden on the exercise of his religious beliefs.  *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).  While the

_____

[1] In his Replacement Opening Brief, Vincent "conceded that the dismissal of the [Department] as a defendant was proper."

court may not "inquir[e] into whether a particular belief or practice is 'central' to a prisoner's religion, *see* 42 U.S.C. § 2000cc-5(7)(A), the Act does not preclude inquiry into the sincerity of a prisoner's professed religiousity." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (citations omitted). Here, the district court acknowledged that it could not inquire into "whether [Vincent's] exercise of religion is required by [his] faith." Nevertheless, the court concluded that Vincent's professed *personal* belief was insincere on the basis of his past commissary purchases. We disagree. Even if the evidence considered by the district court "call[s] into question the sincerity of [Vincent's] belief," there remains a factual dispute concerning Vincent's consumption of the ramen sufficient to preclude summary judgment. Moreover, we are unconvinced that a single incidence of deviation occurring more than four years ago is legally sufficient to prove a lack of sincerity.

In addition, the district court incorrectly concluded that the defendants did not substantially burden the practice of Vincent's religion. To constitute a substantial burden, the government's conduct "must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (citations omitted). Here, there

3

remains a genuine dispute of material fact as to whether the cheese products offered in the commissary are sufficient to satisfy the demands of Vincent's religious beliefs. *See Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 (9th Cir. 2011) (finding a substantial burden where the government "block[s] [the adherent] from obtaining religious materials or leadership from other sources"). Furthermore, the defendants' refusal to provide Vincent with a metabolic diet that meets his religious needs substantially burdened his religious beliefs. *See Shakur*, 514 F.3d at 888–89 (finding a substantial burden where an inmate was forced to eat a diet that caused "adverse physical effects" in order to comply with his religious dietary laws); *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (per curiam) (holding that inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion").

**2.** The district court also erred in granting summary judgment on Vincent's First Amendment claim. Under the First Amendment's Free Exercise Clause, a government regulation that substantially burdens an individual's exercise of their religion must be "reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 884. To make this determination, the court must conduct the four-part inquiry set forth in *Turner v. Safley*, 482 U.S. 78 (1987). Here, dietary restrictions

4

can rationally further a legitimate penological interest in running a simplified food service. *See Shakur*, 514 F.3d at 885–86. In addition, Vincent's ability to read holy scripture and communicate with religious leaders provided him with alternative means of practicing his religion. *See id.* However, the defendants' allegations that accommodating Vincent would require significant additional labor, time, and staff are conclusory and do not indicate that the defendants actually looked into providing Vincent and other similarly situated inmates with religiously compliant metabolic meals. *See id.* at 887–88. Thus, the defendants' allegations were inadequate to satisfy the third and fourth *Turner* factors, and summary judgment was inappropriate. *See id.*

**3.** We conclude that the district court correctly granted summary judgment on Vincent's equal protection claim. To survive summary judgment on an equal protection claim brought under 42 U.S.C. § 1983, Vincent was required to allege facts plausibly showing that "the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001)). Discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects." *Navarro v. Block*,

72 F.3d 712, 716 n.5 (9th Cir. 1995) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).  Here, Vincent has not shown that he was singled out and intentionally treated differently from any other inmate in the Department's custody on account of his religion.  The district court thus properly granted summary judgment in favor of defendants on Vincent's equal protection claim.

**4.**  We affirm the district court's grant of qualified immunity in favor of defendants as to Vincent's claim for damages.  To overcome the defense of qualified immunity, Vincent must show (1) that the defendants violated his constitutional rights and (2) that the right was clearly established at the time of the violation.  *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016).  Here, while we conclude that Vincent raised a genuine issue of material fact as to whether his First Amendment rights were violated, the constitutional question was not "beyond debate," *see Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), and qualified immunity was thus proper.

Accordingly, the district court's grant of summary judgment on Vincent's RLUIPA and First Amendment claims is **REVERSED** and the district court's grant of summary judgment on Vincent's Equal Protection claim and the defendants' qualified immunity defense is **AFFIRMED**.